SHORES, Justice.
In 1942, the Circuit Court for the Tenth Judicial Circuit entered a decree in a declaratory judgment action brought by the Board of Management and the Board of Operatives of American Cast Iron Pipe Company (ACIPCO). The complainants in that equitable action were also the trustees of a trust created by the codicil of the will of John J. Eagan. The respondents were the employees of ACIPCO, the beneficiaries of the trust. After a hearing in that action, the court entered its decree, which in pertinent part provides:
“1. The complainants are the duly constituted members of ,the Board of Management and the Board of Operatives of American Cast Iron Pipe Company, and as such are the trustees of the trust created by the terms of the codicil to the will of John J. Eagan, deceased. They have accepted said trust, taken possession of the trust estate, and are actively managing same.
“2. The corpus of the trust estate created by said codicil, consists of 1085 shares of the common stock of American Cast Iron Pipe Company, a corporation organized under the laws of the State of Georgia and having its principal place of business in Birmingham, Jefferson County, Alabama, at which place is located its plant for the manufacture of cast iron pipe and other products and its general offices. These 1085 shares of common stock constitute the entire outstanding common stock of this corporation.
“3. The beneficiaries of the trust created by said codicil to the will of John J. Eagan are the employees of American Cast Iron Pipe Company. These employees at the present time are more than one thousand five hundred in number. All of said employees reside in Jefferson County, Alabama, with the exception of a few employed at branch sales offices. All of the trustees reside in Jefferson County, Alabama. It is impracticable to make all of the employees of American Cast Iron Pipe Company respondents to this cause. To do so would cause great inconvenience, great expense, and oppressive delays in hearing this cause, and would result in no useful purpose. Twelve of said employees have been made respondents and are represented by their solicitor of record. They are employed in the various departments of the *355 plant of the American Cast Iron Pipe Company and perform various classes of work. Some of said respondents are white employees and some are negro employees. The interest of all of the employees of American Cast Iron Pipe Company in the subject matter of this suit is the same, and the court finds that the employees named respondents are sufficiently representative of all classes of such employees, and that it is unnecessary to make any other of such employees respondents to this cause.
“4. The complainants, as trustees of the trust created by the codicil to the will of John J. Eagan are entitled to have a declaration from this court of their rights as such trustees in the particulars prayed for in the bill of complaint, and to a direction from this court in regard to the particular acts as to which they pray direction in the bill of complaint, and to have this court determine such questions of construction of the codicil to the will of John J. Eagan as are necessary to such declaration of rights and to such direction as to their acts in the administration of said trust.
“5. John J. Eagan was the owner in December, 1921, of 1085 shares of the common stock of American Cast Iron Pipe Company, being the entire outstanding common stock of said American Cast Iron Pipe Company. By virtue of his ownership of said stock he was then in a position to direct and control the affairs of said corporation. He was a man of deep religious convictions and was interested in improving employer-employee relations and had made a careful study for many years of such relations. In December, 1921, he decided to put into operation a plan now known as the ‘Eagan Plan,’ for the conduct of the affairs of the American Cast Iron Pipe Company. Under the terms of this plan he proposed to create two boards which would operate as a part of the corporate set-up of the American Cast Iron Pipe Company. One of these boards he called the Board of Management. This board was the executive committee of the Board of Directors of the corporation and under Mr. Eagan’s plan was to be composed of the President of the corporation, the Vice President of the corporation in charge of purchases and Service Department, the Works Manager of the corporation, the Sales Manager of the corporation, and the Treasurer of the corporation. Each was a member of the Board of Directors. John J. Eagan, by appropriate corporate action, had the name of the executive committee of the Board of Directors changed to the Board of Management. According to the plan of Mr. Eagan, a second Board was set up and named the Board of Operatives. According to the plan of John J. Eagan, to be eligible for election to the Board of Operatives a candidate must be a white man twenty-one or more years of age, who is not an official of the Company (shop foremen excepted), shall have been in the employ of the Company for three or more continuous full years prior to the date of his proposed election, must be an American citizen and must be nominated by a majority of the votes cast in the division he is to represent. According to said plan, employees who have been in the service of the Company for three or more continuous full months prior to a nomination and election (this was later changed to six months) were eligible in the nomination of a candidate for the Board of Operatives to cast one ballot each for two nominees for each representative to be elected in their respective divisions, and in the election and in any run-off election that might be necessary in electing representatives from among said nominees said voters were eligible to cast one ballot each for each representative to be elected in their respective divisions. This plan was put into effect in the first rules and regulations adopted by the Board of Operatives, a true and correct copy of which is attached to the bill of complaint and marked Exhibit E.
“The plan was submitted to the employees at the Christmas Season of 1921.by Mr. Eagan personally. Attached to the bill of complaint, marked Exhibit B, is a report which the court finds to be a true and accurate report of the remarks of John J. Eagan at the time the plan was first submitted. The plan was then presented to the employees in writing, and a true and *356 correct copy of the written proposal is attached to the bill of complaint marked Exhibit C. The proposed plan was accepted by the employees and the first Board of Operatives was elected in March, 1922, and the Eagan plan was put into operation. It functioned under Mr. Eagan’s guidance as a part of the set-up of the American Cast Iron Pipe Company until his death on March 30, 1924. At his death Mr. Eagan left a will and codicil to the will, the codicil being dated April 3, 1923. By the terms of this codicil, the 1085 shares of the common stock of the American Cast Iron Pipe Company owned by Mr. Eagan was devised ‘to the members of the Board of Management and the members of the Board of Operatives of said American Cast Iron Pipe Company, jointly, and their successors in office in said boards, as trustees.’ The court finds as a fact that the Board of Management and the Board of Operatives referred to in the codicil to said will is the Board of Management and the Board of Operatives set up by Mr. Eagan as a part of the Eagan Plan, and that the complainants in this cause and their successors in office are the trustees under the terms of the codicil to said will. The court further finds that it was an integral part of the Eagan Plan that there should always be elected to the Board of Directors of the American Cast Iron Pipe Company by the vote of the trustees the five members of the Board of Management. This is clear not only from the plan as submitted by Mr. Eagan and from his actions in so electing them, but from the fact that the Board of Management is the executive committee of the Board of Directors of the corporation, and its members must, therefore, be members of the Board of Directors of the corporation in order to be members of the Board of Trustees. The court further finds that it was an integral part of the Eagan Plan that two members of the Board of Operatives should be elected to the Board of Directors of the corporation, these two members to be nominated by the Board of Operatives from among its members, and that it was also an integral part of the Eagan Plan that one member of the clerical forces of the Company should be elected to the Board of Directors, such member to be nominated by the votes of the employees of the clerical departments of the Company, including the main office, the Service Department, the cooperative store, the Medical Department, and any clerical forces not otherwise entitled to vote for the members of the Board of Operatives, and that one member of the Board of Directors should be elected from the employees at large of the corporation. The court further finds that it was an integral part of the Eagan Plan that three members of the Board of Directors of the corporation should be elected who were neither members of either of the boards nor employees of the Company. One such member was to be chosen as a representative of the preferred stockholders or capital, one as a member who could fairly represent the religious, social, and educational life of the country, and the third who could fairly represent the buying public. The court further finds that as an integral part of the Eagan Plan there was created what is now called the Negro Auxiliary Board to the Board of Operatives. This board was to be composed of twelve negro employees of the corporation, and to be eligible for election to said board a candidate must be a negro man twenty-one years of age or more, who shall have been an employee of the Company for three or more continuous full years prior to the date of his nomination, shall be an American citizen, and shall be elected by a majority of the votes cast in the division he. is to represent. Every negro employee of the Company who has been in the employ of the Company for six or more full months prior to the election and who works at the plant of the Company in Birmingham, Alabama, and is employed in one of the electoral divisions, shall be entitled to vote for members of the Negro Auxiliary Board. The duties and functions of the Negro Auxiliary board are clearly set forth in the exhibits to the bill of complaint. The court further finds that after the death of Mr. Eagan the Board of Management and the Board of Operatives of the American Cast Iron Pipe Company entered upon their *357 duties as trustees and have continuously since that time actively and fully performed their duties as trustees in accordance with the Eagan Plan. The court finds that it is desirable and in fact necessary to the proper operation of the Eagan Plan and of the trust of which complainants are trustees that suitable rules and regulations for the government of the Board of Trustees shall be adopted. The court has examined the set of rules and regulations adopted by the Board of Trustees, a copy of which is attached as an exhibit to the bill of complaint, and the court finds that these are reasonable rules and regulations for the government of the action of the Board of Trustees in the proper performance of their duties as trustees.
“IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED:
“1. The complainants, as trustees of the trust created by the codicil to the will of John J. Eagan, are entitled to apply for and to obtain instructions from this court as to their administration of said trust.
“2. The complainants, as trustees, have the right and authority in the proper management and conduct of said trust to adopt reasonable rules and regulations to govern the conduct of said trust and the actions of the complainants and their successors as trustees in the management and conduct of such trust.
“3. The rules and regulations adopted by complainants as such trustees are reasonable and proper rules and regulations to be adopted by them as such trustees and said rules and regulations are hereby in all things approved, and the complainants and their successors as such trustees are ordered to be governed and directed by said rules and regulations in their conduct of said trust.
“4. The costs of this proceeding are directed to be paid by the complainants as trustees.
“Done this 6th day of April, 1942.
“/s/ J. Edgar Bowron
“Judge, Circuit Court,
“Tenth Judicial Circuit of
“Alabama, In Equity”
The rules and regulations approved by the court’s decree and made a part of the proceeding provided, inter alia:
“ARTICLE XI „

“Voting

“Section 1. This Board of Trustees, for the purpose of voting on all matters coming before the Board of Trustees, shall be divided into two units, each of which shall cast one vote. The two units shall be the Board of Management and the Board of Operatives of American Cast Iron Pipe Company. In determining how the vote of the Board of Management shall be cast, only members of the Board of Management shall vote, and a majority vote of the members thereof shall determine how the vote of that unit shall be cast. In the same manner, in determining how the vote of the Board of Operatives shall be cast, only members of said Board shall vote, and the vote of a majority of the members of said Board shall determine how the vote of said unit shall be cast. In the event the two units of the Board of Trustees shall fail to agree upon any question, then said question in dispute may be referred to the Board of Directors, whose decision on said question in dispute shall be final. Either the Board of Management or the Board of Operatives may direct the Secretary of this Board to refer said question to the Board of Directors. The Secretary shall make such reference in writing. Any meeting of the members of the Board of Directors held for the purpose of deciding a question in dispute between the two units shall be presided over by an attorney authorized to practice law in Birmingham, Alabama, who is not a member of either the Board of Opera *358 tives or the Board of Management. Such presiding officer shall be paid a reasonable fee for his services. He shall be appointed by the presiding judge of the court having jurisdiction over this trust, which court is at the present time the Circuit Court of the Tenth Judicial Circuit of Alabama.”
“ARTICLE XII
“fhese rules and regulations shall be submitted to the Circuit Court of the Tenth Judicial Circuit of Alabama, Chancery Division, for approval, and when approved by decree of said court, shall not be amended, altered, or changed, except by affirmative vote of the two units composing this Board of Trustees, except that they may be amended, altered, or changed in case of a division in the vote of the two units by submitting the disputed question to the Board of Directors and then submitting any changes approved by the Board of Directors and one only of the two Boards to the court having jurisdiction over this trust for approval or rejection, which court is at the present time the Chancery Division of the Circuit Court of the Tenth Judicial Circuit of Alabama.”
There was no appeal from this decree.
On March 12, 1985, ACIPCO, Carl P. Farlow as Chairman of the Board of Directors of ACIPCO, and P.W. Green, as Secretary of the Board of Trustees under the codicil of the will of John J. Eagan, filed a petition in the Tenth Judicial Circuit requesting the presiding judge to appoint an attorney to preside over the meeting of the Board of Directors of ACIPCO as provided for in the Rules and Regulations of the Board of Trustees set out above and approved by the court in its 1942 decree, also set out above. Without notice having been extended to any other party, the court entered an order on the same day, March 12, 1985, appointing the Honorable J.N. Holt to preside over the meeting.
On March 15, 1985, Nick Johnson and eight others, members of the Board of Operatives established by the codicil to the will of John Eagan, filed a motion to vacate the order appointing the Honorable J.N. Holt to preside over the meeting of the Board of Directors, alleging (1) that they were entitled to notice of the application for appointment and a chance to be heard before the appointment was made; and (2) that the presiding judge of the circuit court “was without jurisdiction to make such appointment as the matter was given a case number, and, therefore, could only be precipitated by the filing of a complaint with required service on the movant.”
When this motion was denied, the petitioners, members of the Board of Operatives, filed in this Court their petition for writ of mandamus directed to the Honorable John J. Bryan, presiding judge of the Tenth Judicial Circuit, requiring him to vacate the order of March 12, 1985, and requiring that the petitioners be made parties and given reasonable notice and an opportunity to be heard in opposition to the application for appointment of an attorney to preside over the meeting of the Board of Directors of ACIPCO.
We grant the writ.
We do not agree with the petitioners’ contention that the court below lacks subject matter jurisdiction. As we view the matter, the court acquired jurisdiction in the 1942 declaratory judgment action and, by approving and adopting the Rules and Regulations of the Board of Trustees, it retained jurisdiction over this trust, the corpus of which is all located in Jefferson County. This does not mean, however, that the members of the Board of Operatives need not be made parties to subsequent proceedings involving the administration of the trust. To the contrary, they are necessary parties to such proceedings and are entitled to notice and an opportunity to appear and participate in the appointment of an attorney provided for in such Rules and Regulations. In fact, in Farlow v. Adams, 474 So.2d 58 (Ala.1985), this Court affirmed a judgment of the trial court reinstating these petitioners, who had *359 been discharged by the Board of Directors because of some of the disputes which led to the deadlock requiring the appointment of an attorney to preside over the meeting referred to in the petition. It is axiomatic that they are necessary parties. Rule 19, A.R.Civ.P.
The petition for writ of mandamus is granted, and the respondent is directed to vacate the ex parte order of March 12, 1985, and to proceed only after the petitioners have been made parties to the proceeding and have been afforded an opportunity to participate.
WRIT GRANTED.
TORBERT, C.J., and MADDOX, JONES, and BEATTY, JJ., concur.
FAULKNER, ALMON, and HOUSTON, JJ., dissent.
ADAMS, J., not sitting.