The petitioners seek a writ of mandamus directing Judge Marvin Cherner of the Jefferson County Circuit Court to award attorney fees and expenses. The writ is denied.
The Board of Operatives ("Operatives") of the American Cast Iron Pipe Company ("ACIPCO") filed petitions in the Circuit Court of Jefferson County seeking payment of attorney fees and expenses incurred in four separate lawsuits that are pending in this Court. The Operatives also filed a petition for an award of attorney fees and expenses incurred in another case previously decided by this Court. Judge Cherner denied the petitions, and the Operatives filed this petition for a writ of mandamus. Judge Cherner's order reads as follows:
"This case has now been submitted for decision by this Court on the . . . petition[s] of plaintiffs, the members of the Board of Operatives, for payment of attorneys' fees and expenses.
"In a number of petitions for allowance of . . . attorneys' fees and expenses, the Board of Operatives seek [a] an . . . award totalling $112,462.50 representing compensation for the services of its attorneys in . . . five cases as of September 5, 1986, and, in addition, reimbursement of expenses in the amount of $11,546.33.
"Practically all of the matters at issue in [these] cases [revolve] around a disagreement between the Board of Operatives and the Board of Management regarding their respective roles under the terms of the Eagan Trust established under the Will of John J. Eagan for the purpose of operating the business of American Cast Iron Pipe Company ("ACIPCO").[1] Earlier decisions on issues involving the rights of ACIPCO *Page 847 
employees include Duff v. American Cast Iron PipeCo., 362 So.2d 886 (Ala. 1978); Smith v. AmericanCast Iron Pipe Co., 370 So.2d 283 (Ala. 1979);Farlow v. Adams, 474 So.2d 53 (Ala. 1985); Exparte Johnson, 481 So.2d 353 (Ala. 1985).
"In the codicil of his Last Will, John J. Eagan left all of the common stock of ACIPCO to the members of the Board of Management and members of the Board of Operatives of ACIPCO jointly as trustees. Eagan gave the trustees power to vote the stock of ACIPCO, stating that it was his desire that the Board of Management should vote as a unit and that the Board of Operatives should vote as a unit, with the vote of each group being determined by the majority vote of the members of the respective Boards. In the event of the failure of the trustees to agree upon any question, the question would be referred to the Board of Directors, whose decision would be final.
"On March 30, 1942, the trustees, consisting of members of the Board of Operatives and members of the Board of Management, filed a petition for instructions with this Court asking this Court to determine whether they as trustees had the right and authority to adopt reasonable rules and regulations to govern the conduct of the trust and whether the rules and regulations submitted with the petition were reasonable and proper rules and regulations to be adopted by the trustees.
"Twelve of the employees of ACIPCO employed in various departments of the ACIPCO plant and performing various classes of work were named as respondents and represented by an attorney. Following submission, the Circuit Court for the Tenth Judicial Circuit of Alabama on April 6, 1942, entered a final decree determining that the trustees had the right and authority to adopt reasonable rules and regulations governing the conduct of the trust and that those submitted by them were reasonable and proper rules and regulations and that the trustees would be governed and directed by such rules thereafter.
"Article XI, Section 1, of the rules and regulations confirmed by the court decree and now incorporated in the By-Laws of the ACIPCO, provides in part as follows:
 " 'In the event the two units of the Board of Trustees shall fail to agree upon any question, then said question in dispute may be referred to the Board of Directors, whose decision on said question in dispute shall be final. Either the Board of Management or the Board of Operatives may direct the Secretary of this Board to refer said question to the Board of Directors. The Secretary shall make such reference in writing. Any meeting of the members of the Board of Directors held for the purpose of deciding a question in dispute between the units shall be presided over by an attorney authorized to practice law in Birmingham, Alabama, who is not a member of either the Board of Operatives or the Board of Management. Such presiding officer shall be paid a reasonable fee for his services. He shall be appointed by the presiding judge of the court having jurisdiction over this trust, which court is at the present time the Circuit Court of the Tenth Judicial Circuit of Alabama.'
"At the 1984 Annual Meeting of the Board of Trustees, a dispute arose between the Board of Management as a trustee and the Board of Operatives as a trustee as to who should be elected directors of the company. In accordance with the rules and regulations quoted above, the dispute was referred to the Board of Directors for resolution.
"ACIPCO made application to Judge John Bryan, as the Presiding Judge of the Circuit Court for the Tenth Judicial Circuit of Alabama, asking that he appoint an attorney to preside over the meeting of the Board of Directors.
"After presentation and argument of counsel for ACIPCO, Judge Bryan appointed J.N. Holt as the attorney to preside over the meeting. That particular meeting of the Board of Directors was never held following the appointment of J.N. Holt.
"At the 1985 Annual meeting of the Board of Trustees, there was again a dispute *Page 848 
between the Board of Management and the Board of Operatives. The matter was again referred to the Board of Directors for a final resolution and, on March 12, 1985, ACIPCO, Carl P. Farlow, as Chairman of its Board of Directors, and P.W. Green, as Secretary of the Board of Trustees, applied to Judge Bryan again to appoint an attorney to preside over the meeting of the Board of Directors of ACIPCO. No notice of the application was provided the Board of Operatives. However, according to the memorandum of law filed on behalf of the Board of Management, a copy of the order appointing J.N. Holt was served on W. Eugene Rutledge, presently the attorney of record for the Board of Operatives. Nick Johnson and James Sloan, represented by Rutledge, then moved for reconsideration of the order appointing J.N. Holt. In the petition, Rutledge first argued that the petitioners had filed the application without giving notice of the same to the Board of Operatives. It was also his position that the decree rendered by this Court in 1942 in case No. 52715 authorizing the adoption of rules and regulations governing the trust was void and that the appointment of J.N. Holt was therefore invalid.
"The motion for reconsideration was overruled by the Presiding Judge. On appeal, the supreme court held that the circuit court had acquired jurisdiction in the 1942 declaratory judgment action and, by approving and adopting the rules and regulations of the Board of Trustees, retained jurisdiction over the trust, the corpus of which is located in Jefferson County.
"The supreme court did determine, however, that the members of the Board of Operatives were necessary parties to subsequent proceedings involving the administration of the trust and were entitled to notice and an opportunity to appear and participate in the appointment of an attorney by the Presiding Judge.
"The supreme court granted the writ of mandamus and directed the circuit court to vacate the ex parte order of March 12, 1985, and to proceed only after the Board of Operatives had been made a party to the proceeding and been afforded an opportunity to participate. Ex parteJohnson, 481 So.2d 353 (Ala. 1985).
"The same disagreement again occurred at the 1986 Annual meeting. This time, the Board of Operatives [was] made a party to the application to Judge Bryan for the appointment of an attorney. Judge Bryan again appointed J.N. Holt to preside over the meeting of the Board of Directors. The Board of Operatives then sought a stay of the appointment from Judge Bryan and also sought a stay from this Court. All of the stays were denied. The meeting of the Board of Directors was then held with J.N. Holt presiding over the meeting, and the matters in dispute were resolved. Judge Bryan's 1986 order appointing J.N. Holt is now on appeal to the Supreme Court of Alabama.
"The issue pending on appeal of the 1986 order is whether there can be any basis at the present time for attacking the validity of the 1942 decree authorizing the adoption of the rules and regulations under which J.N. Holt was appointed to preside over the meeting of the Board of Directors.
"While other issues regarding the 1942 decree are still pending on appeal, the supreme court in Ex parte Johnson,supra, rejected the argument that the 1942 decree was invalid because this Court lacked subject matter jurisdiction.
"The only issue resolved in favor of the Board of Operatives by the supreme court's decision in Ex parteJohnson, supra, was that the Board of Operatives was a necessary party to any proceeding seeking the appointment of an attorney to preside over the meeting of the Board of Directors and was therefore entitled to notice of the application for such appointment and to have an opportunity to participate in the subsequent proceedings seeking such an appointment.
"In his dissenting opinion in Ex parte Johnson,supra, Justice Faulkner said that on March 11, 1985, the day before the application was submitted, P.W. Green, Secretary of the Board of Trustees, gave notice to members of both Boards that an application would be made to the presiding *Page 849 
Judge for the appointment of an attorney. He concluded that the Board of Operatives had notice of the application and that its complaint was without merit.
"Justice Faulkner also noted that neither Board objected to J.N. Holt as the appointee. The Board of Operatives contended that the entire procedure was improper because the rule establishing the procedure for the appointment of an attorney was invalid and that the Presiding Judge did not have authority to make any appointment.
"The other four cases involving controversies between the Board of Operatives and the Board of Management are presently pending on appeal before the Supreme Court of Alabama. In all four cases, the position taken by the Board of Operatives was rejected by this Court. For example, in Adams v.Farlow, Civil Action No. CV 85-500-576 WAT, the Board of Operatives sought preliminary injunction requiring ACIPCO to cancel its agreements with Manpower, Inc., for the use of temporary contract labor; it asked that new rules and regulations be established for the recall of laid-off employees; the Board of Operatives also concluded Leland Adams, Jr., had been improperly reprimanded when he left the plant premises during working hours for the purpose of consulting with the attorney for the Board of Operatives but without permission to do so; the Board of Operatives also alleged that business conducted at one of the meetings was invalid because of the failure to have a quorum at the meeting. In that case, the request for temporary restraining order and for preliminary injunction was denied by this Court.
"Similar allegations were involved in the other lawsuits, Civil Action No. 855-505-127 WAT; Civil Action No. CV 86-636; and Civil Action No. CV 53715. For example, in Moore v.Hardin, CV 53715, the Board of Operatives sought to challenge the final judgment rendered by this Court in 1942, by a motion filed pursuant to Rule 60(b) of the Alabama Rules of Civil Procedure. The Board argued that this Court had no jurisdiction because there was no justiciable controversy; that the decree could not be binding on the employees of ACIPCO in 1942 because no guardian ad litem had been appointed for future employees or for those who were not adults; that the decree was unconstitutional because it violated the Fourteenth Amendment to the United States Constitution by enforcing racially restrictive provisions; and that the 1942 decree was obtained by fraud. By order rendered by this Court on May 29, 1986, this Court concluded that none of the grounds asserted by the plaintiffs had merit. In part, this Court stated:
 " 'Finally, plaintiffs have failed to present any evidence of fraud sufficient to overturn the 1942 decree after a period of forty-four years.'
"The Board of Operatives relies on common law principles and § 34-3-60, Alabama Code 1975, to argue that it should be awarded . . . attorneys' fees and expenses. The Board of Operatives also relies on Article IV-A of the By-laws as mandating the award of . . . attorneys' fees. Article IV-A was construed by the supreme court in Farlow v.Adams, as follows:
 " 'The requirements for indemnification set forth in the above sections are as follows: (1) membership on the Board of Operatives, Board of Trustees, or Board of Directors; (2) status as a 'party' to a civil action because of membership on one of such Boards; and, (3) action in a manner that is reasonably believed by the indemnified party 'to be in or not opposed to the best interests of the company.'
"In Farlow v. Adams, supra, the supreme court held thatthe Board of Operatives was entitled to an award ofattorneys' fees. However, the supreme court had theredetermined that members of the Board of Operatives werewrongfully terminated from their employment for their actionsas members of the Board of Operatives and not for reasonsrelated to their jobs or duties as employees. The supremecourt said in that case that the [members of the] Board ofOperatives were entitled to attorney's fees incurred by themin protecting their rights and duties as trustees of theEagan trust. *Page 850 
"In [the] cases presently pending on appeal before theSupreme Court of Alabama, the Board of Operatives seek[s] tochallenge the rules and regulations under which ACIPCO ispresently managed. The Board seeks a larger if notcontrolling voice in the decisionmaking process.
"With the exception of the decision of Ex parteJohnson, supra, the matters at issue are presently on appeal and before the Supreme Court of Alabama. The decision in Ex parte Johnson did establish for the benefit of the Board of Operatives that its members were entitled to notice of the application to the presiding judge of this circuit for the appointment of an attorney to preside over meetings of ACIPCO's Board of Directors. Since the appointment is entirely within the discretion of the presiding judge, the opportunity to be present at the time of the application is not as significant as it would be if the merits of the application were subject to serious question.
"Some issues regarding the validity of the 1942 decreeare now pending before the Supreme Court of Alabama. ThisCourt considers that the better course of action at thepresent is to defer awarding any fees or expenses pending theoutcome of the appeals before the supreme court.
"Accordingly, the petition of the Board of Operatives for . . . attorneys' fees and expenses is hereby denied but without prejudice to the right of the Board of Operatives to apply for award of fees and expenses after cases presently on appeal have been decided on appeal." (Emphasis added.)
Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Barber v. Covington CountyComm'n., 466 So.2d 945 (Ala. 1985). While the writ will issue to compel the exercise of discretion by a circuit judge, it will not issue to compel the exercise of discretion in a particular manner. Ex parte Liberty Nat. Life Ins.Co., 457 So.2d 404 (Ala. 1984). On the other hand, mandamus is an appropriate remedy when there is a clear showing that the trial judge abused his or her discretion by exercising it in an arbitrary and capricious manner.
In the present case, Judge Cherner has the authority, within his sound discretion, to award reasonable attorney fees and expenses to the Operatives. Troy Bank TrustCo. v. Brantley, 263 Ala. 428, 82 So.2d 618 (1955);Kimbrough v. Dickinson, 251 Ala. 677, 39 So.2d 241
(1949); see also cases collected at 2A Ala. Digest,Appeal Error, Key No. 984(5) ("Attorneys' fees") (1982). It is important to note that Judge Cherner didnot rule that the Operatives were not entitled to an award ofattorney fees or expenses, but merely postponed adetermination on the matter until those cases pending in thisCourt have been decided. The Operatives contend that Judge Cherner abused his discretion by denying their petitions. We disagree.
The Operatives argue that Judge Cherner disregarded this Court's decision in Farlow v. Adams, 474 So.2d 53
(Ala. 1985). Relying on Farlow, they insist that they have a clear legal right to have their petitions immediately granted.
In Farlow, the Operatives brought an action seeking to be reinstated as employees of ACIPCO, contending that they had been wrongfully discharged by the Board of Management solely on account of their activities as members of the cotrustee board. The trial court determined that the Operatives had been wrongfully discharged and reinstated them; however, their request for attorney fees was denied. This Court affirmed the trial court's reinstatement of the Operatives as employees of ACIPCO, but reversed the trial court's denial of attorney fees. The Court held that the Operatives were entitled to attorney fees pursuant to §34-3-60, Code 1975, and also pursuant to an indemnification guarantee contained in ACIPCO's bylaws.
Section 34-3-60 reads as follows: *Page 851 
 "In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint or common property, or any party in the action or proceeding, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind." (Emphasis added.)
Under this section, "when the contentions of a party in litigation are in the interest of and for the benefit of the entire trust estate, the courts will award costs and attorneys' fees from the trust estate to the party benefiting the trust estate." Farlow, at 59.
Concerning the indemnification guarantee contained in ACIPCO's bylaws, the Court, in Farlow, stated:
 "In addition, we find that the Operatives are entitled to attorneys' fees pursuant to the indemnification provisions of ACIPCO's bylaws. Article IV-A of the bylaws provides as follows:
 " 'Section 1: This Company shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was —
" '(a) a Director of the Company;
" '. . . .
 " '(d) a member of the Board of Operatives of the Company;
 " '(e) a member of the Board of Trustees under the codicil of the will of John J. Eagan;
 (those so indemnified being sometimes hereinafter in this Article IV-A described as "indemnified parties" or an "indemnified party" or a "person indemnified", against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in a manner which he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.
" 'Section 2:
 " 'The company shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company to procure a judgment in its favor by reason of the fact he is or was a Director or Officer of the Company, or other indemnified party against expenses (including attorneys' fees), actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the *Page 852 
Company unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.'
 "Moreover, Section 3 of Article IV-A of the bylaws makes it clear that success by one indemnified, in and of itself, entitles the successful party to indemnification without more:
 " 'To the extent that a person under this Article has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in the first or second sections of this Article, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.' (Emphasis supplied [in Farlow].)
 "The Board of Management contends that the Operatives are not entitled to attorneys' fees pursuant to the indemnity provisions, arguing that the indemnity provisions provide indemnification only to defendants in a lawsuit, not to plaintiffs. We disagree. [Emphasis in original.]
 "The requirements for indemnification set forth in the above sections are as follows: (1) membership on the Board of Operatives, Board of Trustees, or Board of Directors; (2) status as a 'party' to a civil action because of membership on one of such Boards; and, (3) action in a manner that is reasonably believed by the indemnified party 'to be in or not opposed to the best interests of the Company.' [Emphasis added.]
 "Here, the Operatives, as plaintiffs, had to resort to the courts in order to defend themselves against what the trial court found, and we find, was the wrongful action of the Board of Directors. Thus, we hold that they are entitled to attorneys' fees as provided for in the indemnity provisions of the ACIPCO bylaws. Accordingly, we reverse the trial court's judgment on the issue of attorneys' fees and direct that court on remand to determine the fair and reasonable attorneys' fees and costs incurred by the Operatives, in the trial court and in this Court, in protecting their rights and duties as trustees of the Eagan Trust and to award such fees to the Operatives."
474 So.2d at 61-62.
The Operatives' reliance on Farlow is misplaced. In that case it was clear that the Operatives were acting in the best interests of ACIPCO. There, the action was commenced in the interest of and for the benefit of the entire trust estate. In the present case, however, there is nothing in the record tending to show that the actions filed by the Operatives were in the interest of and for the benefit of the entire trust estate. Furthermore, there is nothing in the record tending to show that, in filing these actions, the Operatives acted in a manner they reasonably believed to be in, or not opposed to, the best interests of ACIPCO. In fact, it appears to us that Judge Cherner denied the Operatives' petitions with an eye toward making these determinations at a later date. Judge Cherner clearly stated that "This court considers that the better course of action at the present is to defer awarding any fees or expenses pending the outcome of the appeals before the supreme court."
The Operatives simply do not have a clear legal right to an award of attorney fees and expenses at this time. Instead of being under an imperative duty to grant the Operatives' petitions, Judge Cherner had the discretionary authority to postpone his decision as to the propriety of awarding attorney fees and expenses in this case until he could see what impact the decisions in those cases pending in this Court might have on that determination. In Farlow, this Court did not give carte blanche approval for the payment of attorney fees or expenses by ACIPCO anytime the Operatives choose to retain an attorney. Before such fees or expenses are to be paid by ACIPCO, there must be a judicial finding *Page 853 
that the action taken by the Operatives was either in the interest of and for the benefit of ACIPCO or was reasonably believed to be in, or not opposed to, the best interests of the company. We cannot say, after reviewing the record before us, that Judge Cherner acted arbitrarily or capriciously in postponing any award of attorney fees or expenses until such time as a finding can more properly be made.
WRIT DENIED.
MADDOX, JONES, ALMON, SHORES, BEATTY and STEAGALL, JJ., concur.
ADAMS, J., recused.
[1] The Board of Operatives consists of 12 elected ACIPCO employees. The Board of Management consists of the corporate officers of ACIPCO and constitutes the Executive Committee of the Board of Directors. The attorney fees and expenses sought by the Operatives in this case would be paid from ACIPCO funds.