Lisa Michelle Bell Pointer (the "mother") and Victor Lawton Bell (the "father") were divorced in April 1996. The divorce judgment incorporated a separation agreement. That agreement contained a territorial restriction, requiring the mother, who was to have custody of the children, to live within a 165-mile radius of Fort Payne, Alabama.
In February 1997, the father filed a petition to modify the divorce judgment. He requested that he be allowed to claim the parties' two children as dependents for tax purposes. The mother answered the father's petition and filed a counterclaim, seeking an increase in child support and removal of the territorial restriction. The father answered the mother's counterclaim and amended his petition to request a change of custody. After a trial, the trial court granted the father's request that he be allowed to claim the children as dependents for state tax purposes; however, the trial court denied the parties' other requests for modification. The mother appeals from the trial court's denial of her request to remove the territorial restriction. We affirm.
At trial, the mother testified that she and her present husband wanted to move from Nashville, Tennessee, to Las Vegas, Nevada. The mother explained that she had researched the Las Vegas area by contacting the Las Vegas Chamber of Commerce and by searching on the Internet. She testified that she had researched the job market and that she felt that in the Las Vegas area she *Page 223 
would be able to secure employment in the accounting field with little difficulty. She also testified that she expected to earn in Las Vegas a salary that would exceed her current salary. She testified that she thought the school system in Las Vegas was better, and she testified that she and her present husband would be able to afford a house in Las Vegas. According to the mother, she and her present husband had been unable to purchase a house in Nashville, largely because she and the former husband had filed bankruptcy before the divorce.
The mother's present husband testified that he had secured a position with a telecommunications firm in Las Vegas to work as a salesman and account manager. His salary would be approximately $30,000 if he was able to meet the sales quotas. He testified that he felt that he could succeed in his new job because he had good communication skills and had experience in dealing with the public, although he admitted that he had had no experience in sales.
The father testified that he had placed the territorial restriction in the settlement agreement because he did not want his children being "drug" around. He testified that the mother had a tendency to move around and not to be content to stay in one area permanently. The father testified that he enjoyed his visitation with his children; he also testified that he often took the children to visit their paternal grandparents' farm and that the children enjoyed those visits. He testified that he did not want his children to go to Las Vegas because he thought it was too far away and because he felt it was not an appropriate place to rear children. He testified that he, too, had researched the Las Vegas area and the Nashville area. He testified that houses were considerably more expensive in Las Vegas than in Nashville and that the crime rate was higher there.
The trial court's judgment reads as follows:
 "The mother's request that the court remove the [territorial] restriction and permit the children to move to Las Vegas is denied. Although the mother contends that the move to Las Vegas will mean better jobs for her and her present husband and an enhanced standard of living for the children, the court finds that the contemplated enhancement of [the] standard of living is very tentative and is outweighed by the benefits of the children's regular contact with their father, who lives in Huntsville, Alabama, their relationship with extended family in the area, and their contact with established friends, all of which contribute to the stability of the children's lives. It is well established in the law that restrictions on movement of children should be upheld when they promote or protect the best interest [of] the children. The mother agreed to this restriction in the custody agreement incorporated by the court into the final divorce [judgment] and has failed to show sufficient cause why it should not be enforced. See Cohn v. Cohn, 658 So.2d 479 (Ala.Civ.App. 1994)."
The mother argues that the trial court's reliance onCohn is misplaced. She admits that such provisions have been upheld. See McDaniel v. McDaniel, 621 So.2d 1328,1330 (Ala.Civ.App. 1993) and Cohn, 658 So.2d at 481-82
("Restrictions on the movement of children may be upheld when the territorial restriction promotes or protects the best interest of the children involved."). However, the mother places much emphasis on this court's statement that "[a]n agreement that a child must remain in one area is conclusive of the child's best interest only so long as the status of the parties at the time remains unchanged." Wheeler v. Wheeler,585 So.2d 51, 52 (Ala.Civ.App. 1991). The mother's argument is simple: the status of the parties in this case has changed, and the trial court, therefore, was required to lift the territorial restriction and allow her and the children to move to Las Vegas. However, her argument is flawed.
This court has stated that "[t]o find that a child must remain in one geographic area is a mere speculation of what the child's best interest may be at a future date." Wheeler,585 So.2d at 52. Because territorial restrictions are based on speculation regarding the child's best interests and are usually based upon an attempt to maintain the status quo, this court has also cautioned that, when the *Page 224 
restriction no longer serves the best interests of the child, "it is subject to be changed upon proper petition and proof."McDaniel, 621 So.2d at 1330. When the mother requested that the territorial restriction be removed, the trial court had the duty to determine whether the proof submitted by the mother demonstrated that the children's best interests would no longer be served by the restriction. Means v. Means,512 So.2d 1386, 1389 (Ala.Civ.App. 1987).
In making its determination, the trial court considered ore tenus evidence. Therefore, its judgment is clothed in a presumption of correctness, and we cannot reverse it unless it is so unsupported by the evidence as to be plainly and palpably wrong. Scacca v. Scacca, 694 So.2d 1, 2
(Ala.Civ.App. 1997). The parties presented disputed evidence about the standard of living in Las Vegas. The father's evidence concerning the Las Vegas standard of living contradicted the rosy picture painted by the mother and her present husband.
The trial court was required to consider whether the territorial restriction was in the best interests of these children at this time. See McDaniel, 621 So.2d at 1330. "The best interest standard affords freedom for the trial court to consider numerous and varied factors. . . . [T]here are no specific rules or guidelines that will control every case." Hodge v. Hovey, 679 So.2d 1145, 1148
(Ala.Civ.App. 1996). Here, the trial court found that the territorial restriction still served the children's best interests at this time. We cannot disagree, and, even if we did, we could not substitute our judgment for that of the trial court, which heard the evidence and observed the witnesses.Hodge, 679 So.2d at 1148.
We commend the mother for seeking the trial court's permission before she moved to Las Vegas with the children. As she points out in her brief, other parents have not done so. See,e.g., Hovater v. Hovater, 577 So.2d 461 (Ala.Civ.App. 1990), and Means, 512 So.2d at 1388. However, despite our respect for her decision to seek to have the territorial restriction removed by the trial court, we have no choice but to affirm the trial court's decision not to remove that restriction.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.