846 So.2d 349 (2002)
Christina Lee Williamson HOLLON
v.
James Kendrick WILLIAMSON.
2010417.
Court of Civil Appeals of Alabama.
September 27, 2002.
*350 Stacy Lott Reed of Reed, Tew & Associates, L.L.C., Montgomery, for appellant.
John W. Poti, Prattville, for appellee.
THOMPSON, Judge.
Christina Lee Williamson Hollon ("the mother") and James Kendrick Williamson ("the father") were divorced by an August 16, 1994, judgment of the trial court. One child was born of the parties' marriage. The divorce judgment incorporated a settlement agreement reached by the parties. Pursuant to the terms of the divorce judgment, the mother was awarded custody of the parties' minor child, and the father was awarded a standard schedule of visitation. The trial court ordered the father to pay $400 per month in child support.
On August 2, 2001, the father filed a petition to modify custody and a petition seeking a pendente lite hearing regarding custody of the child. The mother answered and filed a motion for a more definite statement. The trial court granted the mother's motion for a more definite statement. The mother filed a motion to dismiss. On September 20, 2001, the mother filed a counter-petition seeking to modify the father's child-support obligation and visitation schedule. The trial court conducted a hearing on December 5, 2001. On December 6, 2001, the trial court entered an order in which it required the mother, who was then living in Louisiana, to return with the child to "the Montgomery area" within 30 days, and it reduced the father's child support obligation to $133 per month. The trial court's December *351 6, 2001, judgment made no other substantive changes to the divorce judgment. The mother filed a postjudgment motion; the trial court denied that motion. The mother appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and that judgment will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ. App.1999).
The parties married on May 16, 1992. The one child born of the parties' marriage was nine years old at the time of the hearing in this matter.
The father has a college degree in marketing and is an insurance representative. The father testified that he had lived in Marbury 20 years. The father testified that the mother had lived in or near Marbury since the parties divorced. The father stated that the mother moved to Louisiana in August 2001. According to the father, the mother informed him she was moving when she picked the child up from his visitation with the father on a Sunday late in July 2001. The father stated that mother's current boyfriend lived in Louisiana and that he was aware that the child had stayed in Louisiana before August 2001.
The father testified that before the mother's relocation to Louisiana, he visited with the child several times per week. The father testified that from August 2001 until the December 5, 2001, hearing in this matter, he had seen the child only seven times. The father remarried in 1999. The father testified that the paternal grandmother and the child's stepmother provided after-school care for the child when the child lived in Alabama.
The father testified that he is concerned about the child's being removed from Alabama and away from the father and his extended family. The father testified that he lived next door to the paternal grandparents and that he had a large extended family in and near Marbury. The father stated that the child is close to his extended family. The father testified that the mother was a good mother and that he would not seek custody of the child if the mother would return to Alabama.
The paternal grandmother testified that prior to August 2001, when the mother relocated to Louisiana, she visited with the child two to three times per week. The paternal grandmother testified that she and the mother had a good relationship and that the mother had a key to the paternal grandparents' house. The paternal grandmother testified that she had seen the child on only one occasion from August 2001 until the December 5, 2001, hearing in this matter.
The mother testified that she had moved to Louisiana in June 2001 because she had visited Louisiana and discovered she liked Louisiana better than she liked Marbury. The mother also stated that she needed to move away from the father's family because they questioned her about her actions and decisions.
The mother testified that she had been fired from her job in Alabama. The mother testified that her employer had told her that she had a particular Friday off, and that after she had left her place of employment, someone left a message on her answering machine stating that she had to *352 report to work that day and if she did not, she would not have a job. The mother further testified that her employer telephoned her and told her that if she would come in and talk to him that he would reemploy her in her previous position. However, the mother testified that she chose to move to Louisiana instead. The mother testified that she has not worked since she and the child moved to Louisiana. The mother stated that she had applied for jobs in Louisiana, but at the time of the hearing in this matter, she remains unemployed.
The mother testified that she and the child lived in a house owned by her boyfriend and that her boyfriend and the maternal grandmother assisted her with buying food, clothing, shoes, and the child's school books. According to the mother, the boyfriend did not live in the house with her and the child.
The mother testified that she had remarried and divorced since her 1994 divorce from the father; the record indicates that the mother's divorce from her second husband was final in May 2001. The mother testified that she and her current boyfriend are not engaged, but that they have talked of getting married. The mother testified that she had no family in Louisiana. According to the mother, her family lives "all over." The mother testified that she had family in Georgia and Tennessee. The record indicates that the maternal grandmother lives in Tennessee.
The mother testified that the father's family visited with the child often when she lived in Alabama because it was convenient. The mother stated that she did not have to pay for child care when she lived in Alabama because the father's family provided after-school care for the child. According to the mother, the child told her he wanted to move to Louisiana. The mother testified that the child was enrolled in school in Louisiana and that he enjoyed his new school.
The child testified that he and his father hunted, fished, camped, and rode mountain bikes together. The child testified that he would like to live close to the father and to the father's extended family, but that he wanted to live with the mother.
On appeal, the mother asserts that the trial court abused its discretion in ordering her to move back to the Montgomery area. However, with regard to that issue in her brief on appeal, the mother cites several custody-modification cases and argues only that the father did not present sufficient evidence to justify a change of custody. Specifically, the mother asserts that the father presented insufficient evidence to meet his burden under Ex Parte McLendon, 455 So.2d 863 (Ala. 1984), for modifying custody. The trial court's December 6, 2001, order states
"1. That the former wife shall, within 30 days from the date of this order, move back to the Montgomery area where she has been promised a job.
"3. In the event the former wife fails to move back to the Montgomery area within the time frame as specified above, then, upon motion the court shall reopen this matter as it relates to custody."
The trial court's December 6, 2001, order did not modify custody of the child; it merely states that the trial court will reconsider its denial of the father's petition if the mother chooses to remain in Louisiana. Pursuant to the trial court's December 6, 2001, order, the child remains in the mother's custody and the father's original visitation schedule remains intact. In her brief on appeal, the mother focuses on whether the father met the McLendon standard in order to support a modification of custody. Although this court may or may not agree with the actions of the trial *353 court, this court concludes that the mother's argument as to that issue is premature.
The mother also asserts that the trial court erred in not imputing income to the father in its calculation of the father's child-support obligation. Pursuant to Rule 32(B)(5), Ala. R. Jud. Admin., "[i]f the [trial] court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income." "The determination of whether a parent paying child support is voluntarily underemployed or unemployed is discretionary with the trial court." Mitchell v. Mitchell, 723 So.2d 1267, 1269 (Ala.Civ.App.1998) (citing Griggs v. Griggs, 638 So.2d 916 (Ala.Civ. App.1994)).
The amount of child support awarded in the parties' August 16, 1994, divorce judgment was not in compliance with Rule 32, Ala. R. Jud. Admin.; however, that award was based on a settlement agreement entered into by the parties and incorporated into the divorce judgment. In her September 20, 2001, petition, the mother sought an award of child support in compliance with Rule 32, Ala. R. Jud. Admin. The record on appeal contains the father's Child Support Income Statement/Affidavit form which shows that the father had a monthly gross income of $923. The mother did not argue before the trial court nor did she present any evidence at the December 5, 2001, hearing indicating that the father was voluntarily underemployed. The mother testified that she was unemployed at the time of the December 5, 2001, hearing. The mother also testified that her former employer stated that she could have resumed her employment, but that she chose to relocate instead. Further, there was no testimony regarding the father's income at the December 5, 2001, hearing in this matter. The appellant has an affirmative duty to demonstrate error on the part of the trial court; this court will not presume such error exists. Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ. App.1993); see also Perkins v. Perkins, 465 So.2d 414 (Ala.Civ.App.1984). The mother failed to present any evidence to the trial court regarding the father's income, and she did not argue to the trial court that it should impute income to the father. We conclude that the mother has not demonstrated that the trial court erred in not imputing income to the father for purposes of determining his child-support obligation. See Greer v. Greer, supra.
AFFIRMED.
PITTMAN, J., concurs.
CRAWLEY and MURDOCK, JJ., concur in the result.
YATES, P.J., dissents.
MURDOCK, Judge, concurring in the result.
In Ex parte Monroe, 727 So.2d 104 (Ala. 1999), our Supreme Court stated that "`[i]n domestic relations cases a minor child has an inalienable right to the maximum protection of the judiciary.'" 727 So.2d at 106 (quoting Ex parte D.W.W., 717 So.2d 793, 796 (Ala.1998)). It appears that the trial court was attempting to protect the child in this case.
Unlike the court in Ex parte Monroe, however, the trial court in the present case has not ruled on whether the father met his burden under Ex parte McLendon, 455 So.2d 863 (Ala.1984), so as to justify a custody modification. Under the trial court's order, if the mother does not move back to Alabama within 30 days, the trial court will reopen the case and consider a further ruling on the father's modification petition. I therefore agree with Presiding *354 Judge Yates that the instant order is not a final judgment and is therefore not appealable; like her, I would treat this appeal as a petition for a writ of mandamus.
"A writ of mandamus is an extraordinary remedy, however, that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner." Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998). The petitioner must demonstrate:
"`(1) a clear legal right in the petition to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Edwards, 727 So.2d at 794 (quoting Ex parte Adams, 514 So.2d 845, 850 (Ala.1987)).
Based on the record as presented in this proceeding, I cannot conclude that the trial court has clearly abused its discretion or acted in an arbitrary and capricious manner.[1]
In light of the foregoing, I concur in the result reached by the main opinion.
CRAWLEY, J., concurs.
YATES, Presiding Judge, dissenting.
This case involves a child-custody modification. In 1994, the parties were divorced. The divorce judgment incorporated a settlement agreement reached by the parties, which provided that the mother was awarded physical custody of the child and set a standard schedule of visitation for the father. The agreement further provided:
"The [father] shall have reasonable opportunity to visit with the child apart from the residence of the [mother], but shall give the [mother] at least 24 hours advance notice of each intended visit. In addition, the [father] shall be responsible for transporting the child to and from the [mother]'s residence and shall bear the expenses thereof, UNLESS THE [MOTHER] SHALL MOVE OUTSIDE THE BORDERS OF ALABAMA, IN WHICH INSTANCE THE COST OF TRANSPORTATION SHALL BE EQUALLY DIVIDED BETWEEN THE PARTIES."
On August 2, 2001, the father petitioned to modify custody. The mother counter-petitioned, seeking to modify the father's child-support obligation and the visitation schedule. The trial court entered the following order:
"This Matter comes before the Court on the Petition to Modify Custody filed in behalf of the [Father] and the Answer and Counterclaim filed in behalf of the [Mother].
"....
"After hearing the testimony and examining the documents the Court finds that it does have jurisdiction over the parties and the cause of action. The Court further finds that the [mother] has remarried, divorced, is unemployed, and is living in her boyfriend's house and is financially dependent upon him in that he pays for all her needs and necessities.

*355 "On the other hand, the [father], the grandparents, aunts and uncles live in the area where the child was raised until the [mother] elected to move to the state of Louisiana. The child, when living in Alabama, spent weekly time with the [father] and the grandparents in addition to his regular visitation.
"The Court is quite concerned about the living arrangements of the [mother] and her inability to care for the child financially.
"The [father] testified that if the [mother] moved back into the Marbury area he would dismiss his custody petition.
"The child, upon agreement of the parties and their attorneys, spoke with the Court concerning his desires, and his desires were to be back in the Montgomery area but to live with the [mother].
"Under these circumstances, it is hereby ordered as follows:
"1. That the [mother] shall, within thirty days from the date of this Order, move back to the Montgomery area where she has been promised a job.
"2. The Order as it relates to visitation shall continue in full force and effect.
"3. In the event the [mother] fails to move back to the Montgomery area within the time frame as specified above, then, upon Motion the Court shall reopen this matter as it relates to custody.
"4. The Court, having reviewed the Child Support Guidelines at the request of the [mother], finds that under the prior order there was a deviation of the Guidelines at the time of the divorce and the [father] is paying the sum of $400.00 per month in child support for one child. Beginning January 1, 2002, and continuing on the 1st day of each month thereafter, the [father] shall pay child support in amount of $133.00 per month.
"5. The [father] shall obtain an additional hospitalization card for the [mother] for coverage on the son."
I would treat the mother's appeal as a petition for a writ of mandamus. Unless otherwise provided by law, appeals lie only from final orders or judgments. Fowler v. Merkle, 564 So.2d 960 (Ala.Civ.App.1989), writ denied, 564 So.2d 962 (Ala.1990). Here, the mother's continued custody of the child is conditioned upon her moving back to Alabama; if she does not the trial court will reopen the father's modification petition. Therefore, the instant order is not appealable. However, this court may treat such an appeal as a petition for a writ of mandamus.
"[A] petition for a writ of mandamus is the proper method for seeking to have a trial court vacate an order that it had no power to enter. Great Atlantic & Pacific Tea Co. v. Sealy, 374 So.2d 877 (Ala. 1979). A writ of mandamus is an extraordinary remedy, however, that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner. Ex parte Rollins, 495 So.2d 636 (Ala.1986). The petitioner must demonstrate the following: `(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Adams, 514 So.2d 845, 850 (Ala.1987)."
Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998).
In Ex parte McLendon, 455 So.2d 863 (Ala.1984), the supreme court held that when a noncustodial parent petitions for a custody modification, he or she must prove initially that a material change in circumstances has occurred since the last custody *356 order, that a change in custody will materially promote the child's welfare and best interests, and that the benefits of the proposed change will clearly outweigh the inherently disruptive effect caused by a change in custody. In the present case, the trial court essentially has not ruled on whether the father has met the burden of proof to modify custody. Instead, it entered a conditional order, leaving the father's petition to modify subject to being reopened at a later date if the mother did not move back to Alabama. Cf. Ex parte Monroe, 727 So.2d 104 (Ala.1999)(although the mother had not yet moved out of state, supreme court upheld the trial court's order granting the father custody if the mother moved out of state).
Custody awards are final and are generally intended to remain in effect until one of the parties succeeds in a petition requesting the court to modify its custody award. Ex parte J.P., 641 So.2d 276 (Ala. 1994). A change in residence of the custodial parent is but one factor to be considered in determining the outcome of a modification petition, and that factor alone does not necessarily justify a change in custody. Judah v. Gilmore, 804 So.2d 1092 (Ala.Civ.App.2000).
I note that at the time of the divorce, the parties clearly contemplated that the mother might move out of state. This is in direct contrast to those cases where the parties initially agreed to a territorial restriction and subsequently sought to modify it. Pointer v. Bell, 719 So.2d 222 (Ala. Civ.App.1998); Cohn v. Cohn, 658 So.2d 479 (Ala.Civ.App.1994).
A review of the record would not support a change of custody under McLendon. The father stated that the mother is a good mother and that if she would move back, he would not seek custody of the child.
Furthermore, although a trial court's judgment based on ore tenus proceedings is entitled to a presumption of correctness if it is supported by the evidence, the order in the present case is not supported by the record and, therefore, is not entitled to such a presumption.
The trial court stated in its order that the mother had been promised a job if she returned to Alabama. There is no testimony in the record that the mother has been promised a job in Alabama when she returned. Instead, the mother testified that she had been promised a job in Louisiana before she moved there. However, the job was not available when she arrived in Louisiana. The mother testified that she was employed, before leaving Alabama, but that she lost her job when she was not available for a weekend shift. There was testimony indicating that at the time she lost her job, her former boss would possibly have given her the job back. Instead, the mother decided to move to Louisiana. However, there was no evidence admitted indicating that she had been promised a job upon her return to Montgomery.
The trial court stated that mother's boyfriend provides for "all her needs and necessities." The mother testified that she lives in a home owned by her boyfriend in Louisiana, but that he lives in another home with his parents. She stated that while she has been unemployed, both her boyfriend and her mother have helped her financially.
The trial court was concerned about the mother's ability to support the child and, although she is unemployed, imputed an income of $824 to her, while at the same time, on its own initiative, it reduced the father's child-support obligation from $400 to $133 per month. The record reflects that in 1994 when the parties divorced, the father was employed by an insurance company *357 making $2,000 per month. The parties had agreed that the father would pay $400 per month in child support, a deviation from the $436 established by the guidelines. The father's CS-41 form for 2001 indicates that he was employed by another insurance company making $993 per month. He testified that he had been in the same line of work for nine years. There was nothing in the record to indicate why the father's income had decreased so substantially while he remained in the same line of work or whether he was voluntarily underemployed. The trial court stated in its order that the child wants to live in the Marbury area, but that the child wants to live with his mother. The trial court interviewed the child alone in chambers and that testimony is as follows:
"COURT: Hi, young man. First, I'm going to tell you that I am sorry you have to be in the middle of this....
"CHILD: (Nods head.)
"COURT: The other thing I want you to know is that both your mama and your daddy love you very, very much, you know that?
"CHILD: Hm hmm.
"COURT: Now, when you lived here and you would visit your dad here, would y'all go hunting?
"CHILD: (Nods head.)
"COURT: And he would take you fishing?
"CHILD: (Nods head.)
"COURT: And y'all would go camping?
"CHILD: (Nods head.)
"COURT: And would y'all ride mountain bikes together?
"CHILD: (Nods head.)
"COURT: And you did a lot of those things with your daddy and your grand-mother and they would go with you when you did those things?
"CHILD: (Nods head.)
"COURT: And your mama and daddy told me that you play baseball and played All Stars, is that right?
"CHILD: (Nods head.)
"COURT: Okay. Now, ... the question come down to this here. You got a lot of relatives that live here. Would you like to move back to Alabama and be with all of your relatives?
"CHILD: I would like to but I want to live wherever my mama goes.
"COURT: If your mama moves back up here, you would like to move with her, is that what you're saying?
"CHILD: Yes.
"COURT: You would like to have everybody pretty close so you could see them all, is that right?
"CHILD: Yes.
"COURT: Cool.
"CHILD: Because I would like to live wherever my mama lives.
"COURT: Well, I'll tell you this. I will see what I can do about that. I heard you got a deer.
"CHILD: A seven point. Shot him in the back spine. It knocked one of his bones out of place.
"COURT: What kind of gun did you use?
"CHILD: A 410.
"COURT: You got a deer with a 410?
"CHILD: Yes.
"COURT: Did you have a (unintelligible) in it? Was it a (unintelligible) shell?
"CHILD: I don't know.
"COURT: Well, it's hard to kill a deer with a 410.
"CHILD: Right. It's a little hole. Pawpaw was right there with me. He was on the hill. He didn't even hear it.

*358 There's a big old buck. Pawpaw looked down and got my gun and I shot him right there.
"COURT: Fantastic. I took my boy deer hunting for five years and never saw a buck. I was in a deer stand over one time and heard this shot. It wasn't really quite daylight and I heard another shot.
"CHILD: He killed two four-point bucks.
"COURT: Unbelievable. Okay. Well,...
"CHILD: The time he got that one, though, and all, the other bucks around him, he saw like eight does, one spike and two bucks. He shot the doe and the doe went straight to the ground. All the other deer ran. It was just two bucks and....
"COURT: Good gracious, Miss Agnes. You are a mighty fine boy. Now, you do good in school for me and don't worry about this. I'm going to take care of it for you."
The trial court did not ask the child about his living arrangements in Louisiana or how he liked living in Louisiana. Clearly, based on the questions asked, the child emphasized that he wanted to live wherever his mother lived. He did not express a desire to live near his father or his family without prompting by the trial court.
The present case is distinguishable from Ex parte Monroe, supra, wherein the trial court awarded the father custody in the event the mother relocated to Michigan. In Monroe, there was evidence that the child spent at least half of his time with his father and there was testimony from experts, counselors, and family members, that the child should stay close to his father and that a "sudden absence of contact with [him] could detrimentally affect him." 727 So.2d at 105.
In the present case, the testimony as to how much time the father actually spent with the child was disputed. There was no testimony from experts or counselors indicating that the child would be detrimentally affected if he continued to live with his mother in Louisiana. The mother has never denied the father visitation and has ensured that the father has had his visitation every other weekend. Additionally, the father testified that the mother should retain custody if she agrees to move back to Montgomery. The mother has demonstrated that she recognizes the importance of the father-child relationship. It appears that the parents could work out a realistic schedule for continued visitation arrangements. Also, the record reflects that although the child would be attending a new school in Louisiana, he would have also been attending a new school in Alabama, and therefore would have incurred change in this area of his life regardless of the move.
In conclusion, the parties contemplated a move by the mother at the time of the divorce. The child would be attending a new school regardless of the move. The child's testimony clearly reflects his preference to live with his mother. No evidence was presented indicating that the child was not being cared for by the mother or that it was in the child's best interests to live in Alabama. Also, I would reverse the trial court's modification of the father's child-support award. The mother was unemployed, and the father did not seek a reduction. There was no testimony as to why the father's income had decreased while he had worked in the same profession for nine years. The evidence in the record does not support a change in circumstances so as to warrant a reduction in the amount of child support owed. Therefore, I must dissent.
NOTES
[1] In her dissent, Presiding Judge Yates notes a number of concerns regarding the facts of this case and the testimony of the child. Without intending to imply any agreement or disagreement with any of the other concerns she expresses, I do note that the record contains no evidence tending to support the trial court's statement that the mother has been offered a job in Alabama if she will now return to this state. In the event the mother does not return to Alabama and the trial court therefore does reopen this matter as it relates to custody, the evidence that has been introduced would not support such a finding.