SAM A. BEATTY, Retired Justice.
Lisa Murphy appeals from an order modifying the child custody provisions of a divorce judgment.
Richard 0. Murphy, Jr. (“the father”), and Lisa Murphy (“the mother”) were divorced on June 12, 1992. In its judgment the trial court ratified an agreement of the parties whereby they would have joint custody of their only child, with the mother having physical custody of the child and the father having liberal and reasonable rights of visitation.
On January 19, 1994, the father filed a petition to modify the custody provisions, alleging that the mother was moving to Texas and taking the child, then three years old, with her. The trial court issued an ex parte temporary restraining order prohibiting the mother’s action and setting a date for a hearing. Following discovery and an amendment to the father’s petition, by which amendment he alleged “emotional and psychological instability” on the part of the mother, the court heard ore tenus evidence. The trial court entered an order awarding custody of the minor child to the father, effective May 19, 1994. The court later extended this order by allowing the mother, who by then had remarried, to have continued custody until May 31, 1994. After each party submitted proposed visitation schedules, the trial court established a schedule on July 21, 1994, and gave its reasons for the modification:
“The Court stresses that it is not doing this to discourage or encourage the mother from moving to Texas with her new husband. The mother’s decision to move to Texas was only one of many factors that the Court considered in changing the custody of the child.”[1]
The trial court, however, did not particularize those factors. This appeal ensued.
Although he adduced some evidence of sexual misconduct by the mother during their marriage, it is clear from the record that the father based this custodial change on the charge that the mother is unfit because *50 of a “long history of mental instability and depression.” It does not appear that any such condition entered into his 1992 agreement that led to the judgment vesting physical custody of the infant child in the mother. Nevertheless, the father testified that he had had serious doubts about the mother’s mental stability as early as December 1992, even though he acknowledged that the mother and her new husband would be good parents.
The mother married Jeff Grosso, a West Point graduate and second lieutenant in the United States Army, on April 8, 1994. Lt. Grosso is stationed at Fort Hood, Texas, and the couple has purchased a home in Texas. Lt. Grosso and the child have a good relationship; indeed, the child has visited Texas and enjoyed his visit. Neither the mother nor her parents believe that the move to Texas will have an adverse effect upon the child.
The father’s evidence focuses primarily upon counselling that the mother herself voluntarily undertook during and after her marriage to the father. During 1992 both of them obtained marriage counselling from their pastor, Robert Hendron. After six sessions, Hendron testified, he “felt” that the mother had a problem with “approval or love addiction,” but he acknowledged that such a condition was very common and, moreover, that it did not render a parent incapable of being a good one. Mr. Hendron performed no psychological profile testing, nor is he a child psychologist. In fact, he did not testify that this condition had any present effect on the minor child. Furthermore, because Mr. Hendron has had no opportunity to observe the mother or the minor child together since April 1992, he could not give an opinion of the mother’s present parental skills.
The mother’s counselling sessions apparently occurred following some life crisis. During her first marriage, to one Philip Marks, she met with a psychologist who specialized in dealing with people who had been adopted and who were seeking their biological parents. Another counselling session followed her divorce from Mr. Murphy, and another took place when she and a man with whom she had had an affair sought counsel-ling to ascertain whether their “relationship could work.” In none of these sessions was any diagnosis of mental instability or severe depression made. To the contrary, the mother’s clinical assessment at Riverbend Center for Mental Health in July 1992 described her mental status as follows:
“1. Affect: appropriate.
“2. Mood: calm.
“3. Thought content: relevant.
“4. Orientation: normal.
“5. Memory: intact.
“6. Hallucinations: none.
“7. Delusions: none.
“8. Intelligence: above average.
“9. Judgment: average.
“10. Insight: average.”
The child has been primarily cared for by the mother, and he is a healthy, well-groomed, happy child, by all accounts. It appears, on the other hand, that the father’s contact with the child increased in the fall of 1993 when the mother advised him of her pending marriage and removal to Texas. That is the crux of the father’s case, that is, the main problem with the mother’s removal of the child to Texas is that with such a move the child would be removed from the father and the father’s family.
This court recognizes the strength of a trial court’s judgment following a hearing in which evidence is presented ore tenus, Wester v. Wester, 500 So.2d 1106, 1107 (Ala.Civ.App.1986), and the limitations upon a review of such a judgment. Calabrisi v. Boone, 470 So.2d 1255, 1257 (Ala.Civ.App.1985). It is well established, however, that when there has been a prior custody determination, the parent seeking to change or modify the custody bears the burden of proving that such a change or modification will materially promote the child’s best interests, thereby offsetting the disruptive effect of uprooting the child. Ex parte McLendon, 455 So.2d 863, 866 (Ala.1984). See also Jenkins v. Jenkins, 541 So.2d 19, 20 (Ala.1989). Even acts of indiscretion or immorality will not support a change of custody absent a showing that such misconduct was detrimental to the child. See Alexander v. Alexander, 625 So.2d 433, 435 (Ala.Civ.App.1993) (evi *51 dence presented that the mother’s lifestyle and moral values were detrimental to the child; change in custody to the father affirmed); Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App.1984) (evidence presented concerning prenuptial indiscreet conduct between the mother and her present husband out of the presence of the child; change in custody to the father reversed because no detriment to the child was proved). See also Howard v. Howard, 608 So.2d 753, 754-55 (Ala.Civ.App.1992) (award of custody of nine-month-old child to the mother affirmed, despite evidence of the mother’s affair, because the mother’s misconduct was not shown to be detrimental to the child).
We conclude that the judgment of the court below was plainly and palpably wrong, in that the petitioning father failed to carry the burden of proof which the law has cast upon him. Ex parte McLendon, 455 So.2d at 866. Accordingly, the judgment must be, and it hereby is, reversed, and this cause is remanded with instructions to enter an order continuing physical custody of the minor child with the mother, together with reasonable visitation rights to the father.
The mother’s request for an attorney fee on appeal is granted in the amount of $1,000. The father’s request for an attorney fee on appeal is denied.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
THIGPEN, J., concurs in the result.

. Clearly, the mother's proposed change in residence is insufficient to justify a change in custody, absent proof that the proposed relocation would adversely affect the child. Moore v. Moore, 585 So.2d 66, 68 (Ala.Civ.App.1991) (main focus of the father’s evidence was that the mother’s move to Florida would make it more difficult for him to visit the child; change in custody reversed); Simmons v. Simmons, 507 So.2d 939, 941 (Ala.Civ.App.1986) (no evidence that the father’s military assignment to Turkey would be dangerous for the child or would otherwise adversely affect him; change in custody reversed).