The trial court modified the joint custody provisions of a divorce judgment by which the mother had physical custody of a three-year-old male child; the modification awarded the physical custody of the child to the father. The Court of Civil Appeals reversed, holding that the modification was plainly and palpably wrong and ordering that physical custody be returned to the mother. Murphy v. Murphy, 670 So.2d 48 (Ala.Civ.App. 1994).
By certiorari petition, the father seeks a reinstatement of the trial judge's order awarding physical custody to him. We reverse the judgment of the Court of Civil Appeals and remand.
The parties were divorced on June 12, 1992. They agreed to joint custody of their son, with the mother having physical custody and the father having "reasonable and liberal rights of association and visitation." Apparently, the parties were able to communicate and cooperate until 1993, when the mother decided to marry for the third time and take the child to Texas with her. The father petitioned to modify the joint custody provisions to place physical custody with him.
The evidence relating to the father's petition was presented ore tenus. It is settled law that "where evidence is presented ore tenus, a child custody determination is committed to the sound discretion of the trial court, and will not be reversed on appeal absent a finding that the determination is so poorly supported by the evidence as to be plainly and palpably wrong."Ex parte Walters, 580 So.2d 1352, 1353 (Ala. 1991); Howard v.Howard, 608 So.2d 753 (Ala.Civ.App. 1992), citing Kellam v.Kellam, 587 So.2d 355 (Ala.Civ.App. 1991), and Smith v.Smith, 448 So.2d 381 (Ala.Civ.App. 1984). There is sound reasoning behind this standard, which recognizes the trial court's unique position to observe the parties and to hear their testimony. Lucero v. Lucero, 485 So.2d 347
(Ala.Civ.App. 1986).
Ex parte McLendon, 455 So.2d 863, 866 (Ala. 1984), requires that the parent seeking a change in child custody prove that the "change or modification will materially promote *Page 53 
the child's best interests, thereby offsetting the disruptive effect of uprooting the child." Ex parte McLendon established a rule of repose:
 " '[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrates that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.' "
455 So.2d at 865, quoting Wood v. Wood, 333 So.2d 826, 828
(Ala.Civ.App. 1976).
We have carefully studied the record and the evidence in this case. We do not agree with the Court of Civil Appeals' conclusion that the trial court's holding was plainly and palpably wrong and that the father had failed to carry the burden of proof set out in Ex parte McLendon. The Court of Civil Appeals stated in Footnote 1 to its opinion that the mother's proposed change in residence would not justify a change in custody, "absent proof that the proposed relocation would adversely affect the child." 670 So.2d at 49. Ex parteMcLendon expressly rejected the "adversely affect" standard in favor of the standard applied in McLendon. This Court inMcLendon noted that the use of the word "adversely" limits the law as stated in our cases, and it reaffirmed the holding inFord v. Ford, 293 Ala. 743, 310 So.2d 234 (1975):
 "For several years now, the Court of Civil Appeals has stated that the parent seeking custody has the burden of showing a change in circumstances which adversely affect the welfare of the child. Lewis v. Douglass, 440 So.2d 1073
(Ala.Civ.App. 1983); Simpson v. Gibson, 420 So.2d 782 (Ala.Civ.App. 1982); Taylor v. Taylor, 387 So.2d 849 (Ala.Civ.App. 1980); Keith v. Keith, 380 So.2d 889 (Ala.Civ.App. 1980). This Court, in 1975, expressly rejected that standard in favor of the standard applied today. We held that 'the use of the word "adversely" limits the law as stated in our cases.' Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). We reaffirm that holding today and further hold that all contrary decisions, including the above-cited ones, are overruled to this extent."
Ex parte McLendon, 455 So.2d at 866.
The case before us is unusual, in that the father is seeking a change of physical custody for the purpose of preventing the disruptive effect of uprooting the child from a very strong family support network. That network includes the child's maternal and paternal grandparents, as well as paternal great-grandparents, all of whom live in Lauderdale County, Alabama. All four of the child's grandparents testified about their involvement and interaction with this child and the care they have provided to him since his birth. Although a change of residence is only one factor for the court to consider in making a change-of-custody decision, it is a factor to be considered. Moore v. Moore, 585 So.2d 66 (Ala.Civ.App. 1991).
Although the trial judge made no express findings of fact in his modification order, he did state that there were multiple reasons for the modification:
 "The Court stresses that it is not doing this to discourage or encourage the mother from moving to Texas with her new husband. The mother's decision to move to Texas was only one of the many factors that the Court considered in changing the custody of the child."
As this Court stated in Ex parte Walters, supra, "where the trial court does not make specific findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous." 580 So.2d at 1354. The trial court heard testimony that the child had already been moved at least three times. Although the mother had primary custody, there was evidence from both maternal and paternal grandparents that responsibility for the child *Page 54 
was shared among the various family members in the Florence area. There was testimony that the maternal grandmother kept the child overnight while the mother was working as a nurse.
The father and the paternal grandmother testified that the mother demanded emotional support from the child, even in circumstances in which the child was sick and needed emotional support himself. The trial court also heard testimony that the child had behavioral problems that will require firm discipline and strong parenting skills to overcome, such as biting other children.
A pastoral counselor, Robert Hedron, who had counseled the couple during their marriage, testified, without objection, that the mother has a problem with approval, or love, addiction, and that this problem causes her to have unrealistic expectations of love that cannot be met. He testified that this problem has manifested itself in marital infidelity in her two previous marriages. He testified that this problem caused her to have an "inordinate preoccupation with the self." The mother admitted to extramarital affairs during the first year or two of both of her previous marriages. In regard to this problem, the mother had sought help from the Riverbend Center for Mental Health in July 1992.
The mother's former lover testified as to her emotional state, specifically describing instances of irrational temper tantrums and outbursts of screaming and crying. He testified that she was once so emotionally upset that she was unable to walk. He also testified regarding an instance in which the mother was traveling from Colorado to Alabama. He said that she claimed that during that trip she was sexually attacked by a man she met on an airplane, but he said that she later carried on a telephone relationship with this man because, she said, he was "just very interesting."
The court heard testimony that at the time of the divorce the father was working at two jobs in order to support the family and was also attending school. He has subsequently completed his course work and now teaches English in Florence. As a teacher, his work schedule allows him considerable time to spend with the child. He has purchased a house in Florence and is engaged to be married. All four grandparents testified that he could properly nurture the child.
We conclude that the trial judge had before him ample evidence that a change of physical custody to the father would materially promote the child's best interests and that the disruptive effect of such a change would be minimal.
The judgment of the Court of Civil Appeals is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.