Teresa Gilmore Judah, the mother, and Michael W. Gilmore, the father, were divorced in July 1993. Two children, a son and a daughter, were born of the marriage. The divorce judgment is not included in the record. However, the parties agree that the divorce judgment, which incorporated the parties' settlement agreement, awarded the parties joint custody of the children, with the mother having primary physical custody and the father having scheduled visitation.
In July 1999, the father filed an emergency petition seeking to modify custody. The father alleged that the mother had divorced her second husband and that she, along with the children, was living with her fiancé and another man. The father alleged that the children did not have beds to sleep on and that they were forced to sleep on the floor. The trial court granted the father's petition and awarded him custody of the children, pending an investigation and further order of the court.
The trial court held a final hearing on the father's petition September 13, 1999, and awarded the father primary physical *Page 1094 
custody of the children. The mother appeals. At the time of the final hearing, the parties' son was 11 years old and the daughter was 9 years old.
The mother argues that the father failed to meet the strict standard established in Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
 "Under McLendon, the parent seeking a change must prove that the change in custody would `materially promote' the child's best interests and welfare. Because of the need for stability in a child's life, the parent seeking the modification must prove to the court's satisfaction that the positive good brought about by a custody change will more than offset the inherently disruptive effect caused by uprooting the child. [McLendon, 455 So.2d at 866]. This is a very stringent standard."
T.P.K. v. P.L.K., 593 So.2d 84, 85 (Ala.Civ.App. 1991). The entry of a pendente lite order does not shift the McLendon rule burden of proof.Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987). Therefore, the father had the burden of meeting the stringent McLendon standard.
Our standard of review in cases where the trial court considers ore tenus evidence is limited because of the presumption of correctness given the trial court's judgment. Ex parte Murphy, 670 So.2d 51, 52 (Ala. 1995). However, when the trial court's judgment is so unsupported by the evidence as to be plainly and palpably wrong, this court must reverse.Murphy, 670 So.2d at 52. After reviewing the evidence presented in this case, we have concluded that the trial court's judgment is unsupported by the evidence and must be reversed.
The evidence presented indicates the following. In the summer of 1999, the mother and the children stayed 6 to 10 nights in an apartment in Montgomery. The mother and the children lived in Eufaula in a four bedroom home. The mother testified that during the 1998-1999 "school year," she worked as a teacher's aide. She further explained that because she worked only during the "school year," she did not have a job from May 1999 through August 1999. She testified that she found a temporary job as a secretary for a company in Montgomery. That job began on June 21, 1999, and was to end July 30, 1999. She explained that she commuted from Eufaula to Montgomery for a while. To end this commute, she began staying in Montgomery at her fiancé's apartment, which he shared with a coworker. The mother testified that the fiancé's coworker was married and had three children. She testified that her fiancé and his coworker rented this apartment because their job required them to travel and to work out-of-town. She further testified that the apartment rent was paid for by her fiancé's employer.
The apartment had two bedrooms. It was undisputed that the two children shared a bedroom during their stay. The fiancé's coworker occupied the other bedroom and the fiancé slept on the sofa in the living room. The mother testified that she either slept on the floor in the living room or on the floor in the children's room. She testified that she had been dating her fiancé for approximately a year at that time and that her children "loved him."
At the time of the final hearing, the mother and her fiancé had married. The mother testified that she now resides in her four-bedroom, two-bath home in Eufaula. She testified that the children actually enjoyed staying in the apartment in Montgomery because the apartment complex had a swimming pool. The mother testified, and there is no testimony to the contrary, that her stay in the apartment in *Page 1095 
Montgomery was a temporary situation, only for the summer.
The mother testified that she and the children were planning to move to Danville, Alabama, at the end of the summer. However, she testified that after the father filed his petition seeking custody, she decided to stay in Eufaula because her children were her priority. The mother's current husband is from Danville and has a home in Danville.
The only evidence the father presented was the testimony of his mother and his own testimony. At the close of his case, the mother's attorney moved for a judgment as a matter of law. In the father's defense, his attorney summarized the evidence that had been presented. In this summary, the attorney stated that it had been shown that the children's living conditions that past summer were not in the children's best interest. He further stated that the children were sleeping on the floor in an apartment with unmarried males. He stated that there was testimony to establish that during this period there was instability in the children's lives because the mother was not sure if she was going to move from Eufaula. A review from the record reveals that the father's attorney correctly summarized the evidence.
No evidence was presented indicating that the mother had neglected the children. Both the father and his mother testified that the mother was a good and caring mother until the summer of 1999. They say at that time, the mother failed to provide the children a stable environment. The mother testified that since the parties' divorce in 1993, she had been the children's primary caretaker. She testified that the father did not regularly exercise his visitation privileges and that he refused to contribute financially to the children's extracurricular activities. She also testified that the children had suffered bruises from the father's spanking them with a belt.
The mother presented testimony from a day-care worker who kept the children during their 6-to-10 day stay in Montgomery. The worker testified that the children were well dressed when the mother dropped them off for the day and that the mother appeared to be a caring and concerned parent. Teachers who had previously taught the children testified that, while the mother had custody of the children, the children's performance at school was excellent and the children had perfect attendance. They further testified that the mother had been very involved with the children's activities.
The trial court requested that the Department of Human Resources conduct home studies of the mother and the father. The Department found that both homes are suitable for raising the children.
The trial court's judgment provides, in pertinent part:
 "Based upon the evidence presented, and testimony adduced in support thereof, the Court finds that there has occurred, since the rendition of the Final Judgment of Divorce on July 8, 1993, such a change of circumstances affecting the welfare of the minor children as to necessitate a change in their custodial residence. The Court further finds that;
 "A. The parties were originally divorced by the Circuit Court of Barbour County on July 8, 1993. As part of the divorce, the parties signed an agreement pertaining to joint custody of the minor children, which was ratified by the Court. Both parties resided in Eufaula, Alabama.
 "B. During the summer of 1999, and prior to the pendente lite hearing, the Plaintiff, mother, appeared more interested *Page 1096 
in her own personal romantic interests than providing a wholesome and stable environment for her minor children.
 "C. This instability by the Plaintiff, mother, is evidenced by the fact that she has lived or `stayed' in the same house with men to whom she was not married and this was done in the presence of the minor children.
 "D. The Plaintiff maintained an open adulterous relationship to the knowledge of the minor children, even though it was with someone who[m] she eventually married.
 "E. The Plaintiff, mother, could not assure this Court during the pendente lite hearing that the minor children would not be placed in such a home environment in the future.
 "F. At the time of the September 13, 1999, hearing, both the petitioner and the respondent maintained homes suitable for the proper rearing of the children. This was further supported by the home investigations performed by the Barbour County Department of Human Resources. Witnesses for both [the mother and the father] testified to the suitability of [the mother and the father] to raise the minor children; however testimony illicited from witnesses for [the mother] tended to show this court that although [the mother] is married and returned to her home in Eufaula, these changes were made subsequent to the removal of the children from the residence of their mother. In the opinion of this court these efforts were an attempt to convince this court that the mother has now refocused on the importance of rearing her children in a proper environment.
 "G. The paternal and maternal grandparents of the children all reside in Eufaula, Alabama, are very involved with the minor children and enjoy active visitation.
 "H. Over the objection of counsel for the wife, an in-camera interview was held with the minor children for the sole and limited purpose of determining their competency to testify in open court.
 "I. This court is now aware that assault charges were filed by [the mother] against [the father] in the Municipal Court of Eufaula and that following a hearing, [the father] was found not guilty. This court is satisfied that no spousal abuse occurred between these parties. This finding is pursuant to Alabama Code Section 30-3-130 through 136."
The court further stated that the "`McLendon' presumption against a change of existing custody is overcome and that in furtherance of the material promotion of the welfare of the minor children of the parties, the primary physical custody needs to be changed."
From a complete review of the evidence, we find that the father failed to meet the burden set out in McLendon. The evidence presented at the hearing does not indicate how a change of custody would materially promote the welfare of the children. All the father has conclusively established is that during the previous summer, the children stayed in an apartment in Montgomery for 6 or 10 nights. During these stays, the children may have slept on a pallet on the floor. Also, the mother's then fiancé, now her husband, was living in the apartment. There was absolutely no evidence indicating that the mother engaged in any sexual activity during her stay in the Montgomery apartment. The evidence presented indicated that the living arrangement was temporary and that by the time of the final hearing, the mother was married and residing in her home in Eufaula. No evidence was presented to *Page 1097 
indicate that the mother's current living conditions were inadequate. There was no evidence indicating that the children had been adversely affected by residing in an apartment in Montgomery for a few days during the summer.
"[A] change of custody from one parent to another is not a decision to be made lightly. On the contrary, it may be granted only where the evidence discloses an obvious and overwhelming necessity for a change of custody." Whitfield [v. Whitfield, 570 So.2d 700 (Ala.Civ.App. 1990)].Glover v. Singleton, 598 So.2d 995, 996 (Ala.Civ.App. 1992). The evidence did not disclose such a necessity in this case.
The father's attorney continuously questioned the mother about her future plans and asked whether she could assure the court that she would continue to reside in Eufaula. The mother testified that she did not know what the future held. There was evidence that the mother had considered relocating; however, at the final hearing the mother testified that she was not relocating. The trial court asked both the mother and her new husband if they had plans to relocate to north Alabama. Both responded "no." There was no evidence to the contrary.
We note that a change in the custodial parent's residence is a factor to be considered in determining the outcome of a modification petition.Patchett v. Patchett, 469 So.2d 642 (Ala.Civ.App. 1985). However, the mother resides in Eufaula and she testified that she has no plans to relocate. There is no basis on which to speculate that the mother is going to move and to then find the existence of a change in circumstances. If the mother moves, her move would trigger a change in circumstances, and the father could then petition for a change in custody. However, we add that a mere change in residence does not necessarily justify a change in custody. Id.
As the trial court noted in its order, the court interviewed the children in camera. A court reporter was present during the interview; however, no transcript was completed. This court has held:
 "If neither party requests that a transcript be made of the interview, however, the record on the appeal of the case is incomplete, and therefore, an affirmance is mandated by the rule stated in Eaton v. Shene, 282 Ala. 429, 430, 212 So.2d 596, 598 (1968) ([W]here there was evidence before the trial court and not before [the appellate court], which may have influenced [the trial court] at arriving at the conclusion it reached, we cannot disturb that finding). Accord, Johnson v. Johnson, 395 So.2d 1043
(Ala.Civ.App. 1981)."
Ezell v. Hammond, 447 So.2d 766, 768 (Ala.Civ.App. 1984). However, from a review of the trial court's judgment, the trial court did not rely on the children's testimony in making its decision and only interviewed the children to determine their competency to testify. The children did not testify.
The mother makes several arguments on appeal. However, because we agree with her that the father failed to meet the McLendon standard and are reversing the court's judgment on that basis, we need not address her other arguments.
The judgment of the trial court awarding custody to the father is hereby reversed, and the trial court is ordered to enter a judgment consistent with this opinion.
The appellant's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED. *Page 1098 
Robertson, P.J., and Yates and Crawley, JJ., concur.
Thompson, J., concurs in the result.