[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 652 
Cindi Schrimscher Long DiIorio ("the mother") and James Darren Long ("the father") were divorced by the Shelby County Circuit Court in 1995, and were awarded "joint custody" of their daughter ("the child"), who was then one year old. The divorce judgment ordered physical custody of the child to be divided equally between the mother and the father, with each having physical custody for alternating seven-day periods. After the parties' divorce, from August 1995 until January 1997, the child resided with the mother 50 percent of the time and with the father 50 percent of the time, pursuant to the terms of the divorce judgment.
As a result of a petition to modify the custody arrangement filed by the mother, the trial court conducted a hearing and, in January 1997, found that "the parties obviously cannot make this joint custody arrangement work without the details being spelled out." Accordingly, the court entered an extensive order providing "details" of the parties' physical-custody arrangement. The order stated that "the primary residence" of the minor child would be with the mother, but also described at length and in great detail, the periods during which each parent would have "physical custody." In addition, the order admonished the parties that the physical-custody rights for the father as set out in the order were intended to be "the minimum physical custody schedule to which the father is entitled," and "encouraged [the parties] to extend [the] father's physical custody" consistent therewith. Consistent with the court's order, from January 1997 until the trial in August 2000, the father maintained actual physical custody approximately 45 percent of the time.
At some time in or before March 2000, the mother made plans to marry a resident of Chicago, Illinois, and to move to Chicago with the child; in March 2000, the father brought an action in which he sought sole legal and physical custody of the child. On March 28, 2000, the trial court entered an order restraining and enjoining the mother from removing the child from the jurisdiction of the court until the trial of the case. Between the entry of that order and the trial of the cause in August 2000, the mother proceeded with her plans to move to Chicago and remarry.
The trial court required the father to satisfy the "material promotion" standard recognized in Ex parte McLendon, 455 So.2d 863 (Ala. 1984). Under the principles established in Ex parte McLendon, the presumption in favor of a natural parent's custody of his or her child is enhanced if (1) he or she has custody pursuant to a "voluntary forfeiture of custody" by the other parent or "a prior decree removing custody" from the other parent, 455 So.2d at 865, and (2) the custodial parent has "acted upon" such voluntary forfeiture or judicial decree "to the manifest interest and welfare of the child" by providing a stable, secure, and nurturing environment in which the child has "put down . . . those roots necessary for the child's healthy growth into adolescence and adulthood," id. at 865-66. In order to overcome this enhanced presumption in favor of the custodial parent, the noncustodial parent must *Page 653 
demonstrate that the proposed "change of custody `materially promotes' the child's best interests and welfare," "more than offset[ing] the inherently disruptive effect caused by uprooting the child." Id.
The trial court determined that the father had satisfied the McLendon
standard and it entered a judgment awarding sole legal and physical custody of the child to the father. The court found that there had been a material change in circumstances and stated:
 "Based upon the evidence received, the Court hereby finds that the change of custody to the father will materially promote the child's best interests and that the benefits of changing custody to the father far outweigh and offset the inherently disruptive effect that will be caused by the child being uprooted from her mother. These findings are based upon observation of the parties and the minor child and other evidence received during two days of testimony."
(Emphasis added.) The trial court's judgment also stated:
 "That evidence included the fact that the mother has had multiple boyfriends over the last three years. She has exposed the minor child to at least four boyfriends with whom she has had significant relationships. That does not include her present husband. She has also violated the Court's previous orders by having some of these boyfriends as overnight guests while the minor child was in her home. At least two of these boyfriends . . . have recently been convicted of crimes involving controlled substances.
 "The change in custody is also supported by the testimony of the licensed marriage and family therapist. . . . Her conclusion was that the change brought about by a move to Chicago would be very traumatic for the minor child. She testified that [the minor child] particularly does not adjust well to change. She further testified that to uproot the child from this area and the contacts that she has here would be more detrimental than would separating her from her mother in an award of custody to the father.
 "While the mother gave glowing testimony about the benefits of moving the child to Chicago and having the child enrolled in the same school where she would be teaching, the Court finds that those benefits are far outweighed by the detrimental effect of separating the child from her father, members of her extended family, numerous childhood friends and other contacts she has made here in Alabama.
 "Based upon this Court's findings, some of which are set out above, the Court hereby GRANTS [the father's] Petition to Modify and hereby modifies the terms and conditions of the Final Decree of Divorce."
(Emphasis added.) The mother appeals from that judgment.
A judgment of a trial court based on evidence received in an ore tenus proceeding is presumed correct, and the court's findings will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence. Anderson v. Lee, 621 So.2d 1305 (Ala. 1993) (quoting McCoy v. McCoy, 549 So.2d 53 (Ala. 1989)). Where the evidence has been presented ore tenus, a presumption of correctness attends the trial court's conclusions on issues of fact, and an appellate court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence. Raidt v. Crane, 342 So.2d 358 (Ala. 1977). See also Ex parteWalters, 580 So.2d 1352 (Ala. *Page 654 
1991); Howard v. Howard, 608 So.2d 753 (Ala.Civ.App. 1992); Kellam v.Kellam, 587 So.2d 355 (Ala.Civ.App. 1991); and Smith v. Smith,448 So.2d 381 (Ala.Civ.App. 1984).
The ore tenus rule recognizes that the trial judge is better able than is the appellate court to determine the credibility of the witnesses. The trial judge has the discretion of accepting or rejecting testimony of a witness and of giving appropriate weight to testimony because he or she is in a better position to consider the demeanor of the witness and that witness's candor and/or evasion. If the judge has determined that a witness has lied or is lying under oath, he or she can take that fact into consideration when weighing other evidence presented by that witness. See James v. James, 532 So.2d 1031 (Ala.Civ.App. 1988). "The ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to hear the evidence; additionally, the perception of an attentive trial judge is of great importance, particularly in child custody cases." Williams v.Williams, 402 So.2d 1029 (Ala.Civ.App. 1981); Smith, supra; Ex parteWalters, supra; and Lucero v. Lucero, 485 So.2d 347 (Ala.Civ.App. 1986).
In awarding custody of the child to the father, the trial court relied, among other things, on the fact that the mother had moved to Chicago and that she proposed to move the child to Chicago. Although this court has held that a "change in the custodial parent's residence is only one factor to be considered in determining the outcome of a [custody] modification petition and does not necessarily justify a change in custody," a change in a child's residence nonetheless is a valid factor.See Scacca v. Scacca, 694 So.2d 1, 4 (Ala.Civ.App. 1997) (emphasis added).
The trial court also had before it substantial evidence that a particularly close relationship had developed between the child and her father. See generally Dale v. Dale, 54 Ala. App. 505, 310 So.2d 225
(Ala.Civ.App. 1975). There likewise was evidence of a very close relationship between the child and her paternal and maternal grandparents, all of whom live with the father or close to his residence. See Ex parte Monroe, 727 So.2d 104 (Ala. 1999) (evidence of a strong relationship between a minor son and his father and his father's extended family, with evidence that such relationships were in the best interests of the child, was held to be sufficient to support modification of custody after the child's mother decided to move out of state).
The trial court found that the detrimental effect of separating the child from her father, grandparents, friends, and physical environment far outweighed the detrimental effect of separating the child from her mother. In support of this conclusion, the court had before it the testimony of several witnesses, including the father and a licensed marriage and family therapist.
In Ex parte Murphy, 670 So.2d 51 (Ala. 1995), the Supreme Court had before it a case in which the parties had agreed to joint custody of their son, with the mother having physical custody and the father having reasonable and liberal visitation rights. 670 So.2d at 52. When the mother decided to remarry and take the child to Texas with her, the father petitioned to modify the joint-custody provision. In reversing this court's judgment and upholding the trial court's order changing custody to the father, our Supreme Court noted:
 "The case before us is unusual, in that the father is seeking a change of physical custody for the purpose of preventing the disruptive effect of uprooting the child from a very strong family support network. That network includes the child's maternal and paternal grandparents, *Page 655 
as well as paternal great-grandparents, all of whom live in Lauderdale County, Alabama. All four of the child's grandparents testified about their involvement and interaction with this child and the care they have provided to him since his birth. Although a change of residence is only one factor for the court to consider in making a change-of-custody decision, it is a factor to be considered."
Id. at 53.
Although it applied a "best interest" standard rather than a McLendon
presumption, we find the Supreme Court's discussion of the facts before it in Ex parte Couch, 521 So.2d 987 (Ala. 1988) to be instructive. InCouch, a father sought a change in custody in connection with the mother's planned move to New York. The parents had previously been awarded joint legal and physical custody of the children. The mother had maintained primary actual physical custody of the children for approximately one year immediately before the trial. Under these facts, our Supreme Court concluded that the McLendon presumption was not applicable. In considering whether the trial court reached the right result under the best interests standard, however, the Supreme Court stated that
 "The policy considerations of McLendon . . . — the trauma of uprooting the children and the resulting benefits of the move — might still have been valid considerations for the trial court.
 "But the facts of this particular case make the situation even more unusual. The children would have been `uprooted' even if they had stayed with their mother. They would have had to move from Alabama to New York, thus changing schools, churches, and activities, and they would also have had to adjust to a stepfather."
Ex parte Couch, 521 So.2d at 990. Substituting "Chicago" for "New York," the same could be said in the present case.[1]
In addition, the child in this case actually lived with the father 45% of the time during the three years between the parties' previous custody judgment and the trial of this case in August 2000 (and 50% of the time for the two years before that). As McLendon indicates, whether a change in circumstances is material and whether the promotion of a child's welfare that will result from a custody modification will be material are both measured against the disruption that will be caused by uprooting the child from the existing custodial arrangement:
 "`The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good *Page 656 
brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child.'
". . . .
 ". . . It is important that [the party seeking a change of custody] show that the child's interests are promoted by the change, i.e., that she produce evidence to overcome the `inherently disruptive effect caused by uprooting the child.'"
McLendon, 455 So.2d at 865-66 (emphasis added; quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976)). See also Ex parte Bryowsky,676 So.2d 1322, 1324 (Ala. 1996) ("informal arrangement to care for a child . . . and its impact on the child [are] factors to be considered in determining whether a transfer of custody from the mother to the father would materially promote the child's welfare").
The father is a registered pharmacist, earning approximately $43,000 per year. The child has frequently spent time with the father at his place of business. The father's normal workday hours are flexible, and he can usually leave work early. The father also testified regarding differences in the child's physical environments in Alabama and Chicago. Among other things, he noted that the mother and her new husband live in a "loft" apartment in an urban area of Chicago, whereas at the father's home the child has a neighborhood and a large front yard in which to play. As noted, there was substantial evidence of a very strong bond between the father and the child, as well as his substantial involvement in her activities. Even the mother testified that the father was a good father, and that her home was not better suited for the child than the father's.
In 1998, the father took the child to a physician because she was having night terrors and bad dreams regarding a couple of the mother's boyfriends. The child complained of headaches, stomach aches, bad dreams, and nightmares on some occasions following her return to the father after being in the mother's physical custody. There was substantial evidence that, over the last several years, the mother has had several boyfriends and that, in violation of the court's previous orders, she had allowed some of these boyfriends to stay overnight with her and the minor child. The court also found that at least two of the mother's boyfriends had been convicted of crimes involving controlled substances.
The trial court also had before it substantial additional testimony from more than one witness, testimony that was in many cases unrefuted, regarding the mother's moral character and lifestyle choices as they related to and reflected upon her capacity and interest in providing for the emotional, social, and moral needs of her child. See generally D.N.v. J.H., 782 So.2d 323 (Ala.Civ.App. 2000). With respect to such matters, there was evidence that the mother gave inconsistent testimony and testimony that was contradicted by the father's evidence, in such a manner as to raise credibility concerns. The record is such that the trial court could have drawn adverse inferences as to the mother's credibility as it related to her testimony concerning such matters and, therefore, concerning other matters as well. See James, supra ("if the trial court believed from the evidence that the wife willfully and corruptly swore falsely as to . . . a material fact involved in the custody and other issues, the trial court as the trier of the facts had a discretion to exercise as to whether it should disbelieve and disregard all, or any other portions, of the mother's testimony").
The court therefore had before it substantial evidence to support its finding that material changes in circumstances had occurred since its initial custody order in *Page 657 
1995;[2] likewise, it had substantial evidence of various factors that were not before the court at the time it entered its original custody order. See generally Sain v. Sain, 426 So.2d 853 (Ala.Civ.App. 1983). Under the ore tenus rule, we cannot say that the trial court's judgment that the child's interests and welfare will be "materially promoted" by remaining with the father was plainly and palpably wrong.
This case is not one like Scacca, in which the parent who wanted to move with the child had had actual physical custody for most of the child's life. 694 So.2d at 2-3. Moreover, in Scacca, this court simply held that a parent's move is not necessarily enough to meet the "material promotion" standard of Ex parte McLendon. Here, however, there is enough.
In this case, the mother and father were awarded joint legal custody, and the father maintained actual physical custody some 45 to 50% of the time before trial. There is substantial evidence of a very close relationship between the father and the child. The mother chose to proceed with her move to Chicago, even after a court order and the fact of this litigation cast doubt on whether the child would ever be able to join her, and the child thereafter lived with the father. Awarding the exclusive physical custody of the child to the mother would not only uproot the child from her relationship with her father, but also from her well-established relationships with extended family, her friends, and her physical environment here in Alabama. In addition, there was substantial evidence impugning the mother's moral character and lifestyle choices as they related to her capacity to provide for, and her interest in providing for, the emotional, social, and moral needs of her child. Further, there was substantial evidence from which the trial court could have drawn negative inferences regarding the mother's credibility as to the testimony she offered throughout the trial.
"There is sound reasoning behind [the ore tenus] standard, which recognizes the trial court's unique position to observe the parties and to hear their testimony." Ex parte Murphy, 670 So.2d 51, 52 (Ala. 1995).
 "[The trial judge] is the one closest to the scene and the protector of the children until they become adults. That responsibility is awesome and must weigh heavily upon the bearer. It is in recognition of that burden, that our appellate courts presume that the trial judge, who observed the parties and heard the testimony of the witnesses, correctly discharged his responsibility. In only the instance of clear and palpable abuse of the discretion granted, should a reviewing court on appeal disturb the judgment of the trial court."
Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App. 1984).
In this case, there was substantial evidence to support the trial court's judgment. We therefore affirm that judgment.
Both parties' requests for attorney fees on appeal are denied.
AFFIRMED. *Page 658 
PITTMAN, J., concurs.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur in the result.
[1] Unlike the "normal" custody-modification proceeding that can end simply with a denial of the modification petition if the stringentMcLendon standard is not met, thus leaving the parties with the same respective custody/visitation arrangement they had before the action was commenced, a decision by one parent to move out of state (or some other considerable distance) almost inevitably requires a significant disruption in the child's custody or visitation with one parent or the other.
In the present case, the father has maintained actual physical custody of the child approximately 45% of the time during each of the last several years before trial. Now that one of the parents is moving out of state, awarding primary physical custody to either parent will besomewhat disruptive to the child; however, awarding primary physical custody to either parent will not be as disruptive as in a typicalMcLendon situation.
[2] The transcript of the hearing in this case was 483 pages long. The majority of that transcript contains testimony and other evidence supporting the father's contentions that it would materially promote the child's best interests for the child to remain in Alabama with the father and the remainder of the extended family, rather than moving to Chicago to join the mother and her new husband.