Rel: April 17, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

————————————————

### CL-2025-0375

————————————————

**Christopher C. Creekmore**

**v.**

**Ginger A. Creekmore**

**Appeal from Elmore Circuit Court**
**(DR-22-900138.01)**

BOWDEN, Judge.

Christopher C. Creekmore ("the former husband") appeals from a judgment entered against him by the Elmore Circuit Court ("the circuit court") in a postdivorce contempt action between him and Ginger A. Creekmore ("the former wife"). He argues that the circuit court erred by

holding him in contempt for failing to pay the former wife alimony and by improperly modifying the alimony award. He also argues that the circuit court erred in ordering the clerk of the circuit court to execute a warranty deed vesting title in the parties' marital home in the former wife. We reverse and remand.

Background and Procedural History

The parties were divorced on August 25, 2022. The circuit court's final decree of divorce fully incorporated a settlement agreement between the parties. The parties' settlement agreement addressed, in pertinent part, alimony and the parties' marital home. The alimony provision of that agreement stated:

"VI. ALIMONY

"Section 6.1 -- Spousal Support

"Husband shall pay to Wife rehabilitative alimony in the amount of One Thousand Two Hundred Dollars ($1,200.00) per month beginning on the first day of the first month following the execution of this Agreement and continuing monthly thereafter on the first day of the month until the month Husband retires from the United States Air Force.

"Section 6.2 -- Retirement Accounts

"A. Wife shall receive Fifty Percent (50%) of the disposable military retired pay of the Husband beginning immediately upon Husband's receipt of said retirement pay.

2

The payment of Wife's share of the military retirement pay shall be made directly to Wife by the Defense Finance and Accounting Service (DFAS).

"B. The Husband waives any and all claims to the Wife's retirement and investment accounts, benefits, and other entitlements."

(Capitalization in original.)

The provision of the settlement agreement that addressed the parties' marital home stated:

"The parties acknowledge that they acquired real property ... and maintained said real property as the marital residence (the 'Marital Residence'). The parties acknowledge and agree that Wife shall retain sole possession with the Husband retaining sole title of the Marital Residence subject to the terms herein.

"Husband shall be responsible for all monthly payments and insurance of said marital residence. Wife shall be responsible for all utilities and maintenance of said marital residence during her occupancy of the residence.

"The parties further agree that beginning on the first day of the first month following the execution of this Agreement, Wife shall lease the Marital Residence from the Husband on a 'rent-to-own' basis. Wife's monthly lease payment payable to Husband shall be $1,388.00. Should Wife fail to timely make any payment, Husband shall be entitled to immediately retake possession of said Marital Residence. Should Wife pay all of the outstanding mortgage on the Marital Residence, Husband shall execute any and all documents necessary to transfer full title to her. Should Wife, at any time, desire to refinance said Marital Residence and remove Husband from any and all liability from any mortgage

and/or promissory note, Husband shall execute any and all documents necessary for Wife to do so. Wife shall be allowed to assume the mortgage if she can qualify to do so. Husband shall not further encumber the marital residence with debt.

"Wife may, at any time, place the Marital Residence on the market for sale. Upon the closing of the sale, Wife shall be entitled to One Hundred Percent (100%) of the net proceeds from the sale. Husband shall execute any and all documents necessary at the closing of the sale.

"Husband, at his sole expense, shall obtain from a licensed real estate appraiser an appraisal of the Marital Residence within thirty (30) days of the execution of this agreement. Within thirty (30) days of receipt of said appraisal, Wife shall pay to Husband Fifty Percent (50%) of the net value of the Marital Residence (appraised value of the Marital Residence less the outstanding balance of any mortgage/promissory note/etc.). The parties agree that said sum represents Husband's total equity in the Marital Residence."

On September 6, 2023, the former wife commenced the underlying action by filing a petition for contempt in the circuit court. In her petition, the wife claimed that the former husband had been discharged from the military before reaching retirement age because of misconduct. She claimed that he had begun working for the government as a civilian contractor and could, therefore, still afford the alimony payments; however, she alleged, he had ceased making the alimony payments to prevent her from being able to make the monthly rent payments on the

4

marital home. As a result, she requested that the circuit court hold the former husband in contempt for failure to pay alimony. Further, she requested that the circuit court "take jurisdiction of this matter and decide the rights of the parties concerning the parties' real property." The former husband filed his answer on December 20, 2023.

At trial, no court reporter was present, and no transcript was made, so the former husband submitted a statement of the evidence or proceedings pursuant to Rule 10(d), Ala. R. App. P., which the circuit court approved. The former husband's statement of the evidence or proceedings provided, in pertinent part:

"At trial the following exhibits were admitted without objection

"1. [The former husband]'s Exhibit 1 -- Final Decree of Divorce with Settlement Agreement

"2. [The former husband]'s Exhibit 2 -- DD214 Certificate of Release or Discharge from active duty

"3. [The former husband]'s Exhibit 3 Leave and Earning Statement dated 1-30 June 2023

"4. [The former husband]'s Exhibit 4 -- Reserve Order dated 31 Mar[ch] 2023

5

"5. [The former husband]'s Exhibit 5 -- Limited Liability Company Warranty Deed Jointly for Life with Remainder to Survivor

"6. [The former husband]'s Exhibit 6 Autauga Co. Property Record Summary

"7. [The former husband]'s Exhibit 7 -- Lease Agreement

"8. [The former wife]'s Exhibit 1 -- Final Judgment of Parties entered August 25, 2022

"9. [The former wife]'s Exhibit 2 -- Receipt for payment from [former wife] to [former husband] showing payment of $33,145.00 for equity in home

"10. [The former wife]'s Exhibit 3 -- Deed to Former marital residence

"11. [The former wife]'s Exhibit 4 [--] Military Personal Information of [former husband's] current duty

"12. [The former wife]'s Exhibit 5 -- Military personal information of [former husband's] assignment

"13. [The former wife]'s Exhibit 6 -- Military information showing reserve order

"14. [The former wife]'s Exhibit 7 -- Defense Finance earning statement for [former husband]

"The parties stipulated:

"-- That [the former wife] had paid to [former husband] the sum of $33,145.00 which was [former husband]'s 50% equity in the Marital Residence

"-- That [the former husband] paid alimony as Ordered beginning August 1, 2022, until June 1, 2023 (11 months) and did not make any additional alimony payments after June 1, 2023

"[The former husband] testified

"-- That he was Honorably Discharged from the Air Force Reserve[] effective June 30, 2023

"-- That he retired from the Air Force Reserve[] effective July 1, 2023

"-- That his retirement was based on 20 or more years of service

"-- That, as an Air Force Reserve retiree, he would not be eligible to receive any military retirement pay until he reached 60 years of age

"-- That after his discharge from the military, he then was a civilian employed by a military contractor

"-- That [the former husband] had not taken any action to repossess the marital residence from the [former wife]

"-- That at the time of the trial, the marital residence was still deeded in the name of both the [former husband] and the [former wife]

"-- That while the parties' settlement agreement incorporated into the Final Decree of

Divorce was drafted by counsel for the [former husband], the 'rent-to-own' language regarding the marital residence was included at the expressed request of the [former wife]

"-- That [the former wife] could have sold the marital residence at any time if she chose to do so and that she would be entitled to 100% of the net proceeds from the sale

"-- That [the former wife] could have refinanced the marital residence at any time and removed [the former husband] from the deed and mortgage if she chose to do so

"-- That [the former husband] had the ability to pay the previously Ordered alimony but that he believed that he had fulfilled his alimony obligation [and] was no longer obligated to make such payments

"[The former wife] testified

"-- That she was able to read and write in English and that, prior to executing the agreement, she had the opportunity to read the parties['] settlement agreement that was incorporated in the Final Decree of Divorce

"-- That based on representations by [the former husband], she believed that [the former husband] would remain in the military for an additional 8 years after the divorce before retiring

"-- That [the former husband] had not actually retired from the military but had been discharged prior to retirement due to misconduct

8

"Both parties testified

"-- That each of them were unaware at the time of the execution of the parties['] settlement agreement, that both [the former husband] and [the former wife] were named as joint tenants on the deed to the marital residence

"No evidence was presented by either party to suggest

"-- That [the former husband] was discharged from the military prior to full retirement

"-- That [the former husband] was discharged from the military due to misconduct"

On March 11, 2025, the circuit court entered a final judgment, which stated, in pertinent part:

"Upon hearing the testimony, at length, the Court finds as follows:

"1. That the parties agreed for their Final Decree and the same was incorporated into that Order.

"2. That the [former] husband was a career military person and agreed to pay alimony until he retired.

"3. The parties were aware the [former] husband had 8 more years until retirement. After 12 months, he announced without warning that he was leaving the military.

"4. He paid his [former wife] 12 months of the $1,200.00 per month alimony and stopped.

"5. He did not retire but separated from the Air Force Reserve[] and started working for the civil service.

"6. He has not executed a deed to his [former wife], even though he has no interest in the old marital residence.

"7. Contempt is found for his failure to pay alimony as anticipated in their agreement and the [former wife] was unable to file suit to continue the alimony before he separated from the Air Force Reserve[]

"IT IS THEREFORE ORDERED,

"1. That the Court finds that the [former] husband is prohibited from suspending the monthly alimony and that he owes the [former wife] 22 months of alimony to March 31, 2025, and the same is to be paid to her in 90 days.

"2. The [former] husband further owes monthly alimony at $1,200.00 until 96 months from July 2022.

"3. The Clerk of the Court is to execute and deliver to the [former wife] a warranty deed on the parties' marital residence, referenced as recorded in RLPY Book:2019, Page 698, Instrument ID: 592885, thereby removing any interest in and to the parties' past marital residence and vesting all right title and interest in the [former wife], subject to the outstanding mortgage.

"4. Attorney's fees for the contempt to be set upon the attorney for the [former wife] filing her Affidavit of time involved.

"5. All other requested relief is denied."

(Capitalization in original.)

10

On March 28, 2025, the former husband filed a motion seeking to stay the judgment and determine a surety bond and stating that he intended to appeal the judgment. On April 9, 2025, the former husband filed a postjudgment motion. The former husband appealed on May 21, 2025. On June 16, 2025, the circuit court entered an order stating that it did not have jurisdiction to rule on the former husband's postjudgment motion.

## Standard of Review

"'[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002). '"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985))."

Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005). Questions of law are reviewed de novo. Cannon v. Cannon, 844 So. 2d 1219, 1221 (Ala. Civ. App. 2002). Additionally,

"whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."

11

Stack v. Stack, 646 So. 2d 51, 56 (Ala. Civ. App. 1994).

Analysis

I.     Whether the circuit court erred in finding that the former husband did not retire, but rather separated, from the Air Force Reserve

In its judgment, the circuit court found that the former husband "did not retire but separated from the Air Force Reserve[] and started working for the civil service." The former husband argues that that finding is not supported by the evidence. He further argues that his obligation to pay alimony to the former wife ended when he "retired" from active service effective July 1, 2023.

> "Our standard of review in cases where the trial court considers ore tenus evidence is limited because of the presumption of correctness given the trial court's judgment. Ex parte Murphy, 670 So. 2d 51, 52 (Ala. 1995). However, when the trial court's judgment is so unsupported by the evidence as to be plainly and palpably wrong, this court must reverse. Murphy, 670 So. 2d at 52."

Judah v. Gilmore, 804 So. 2d 1092, 1094 (Ala. Civ. App. 2000). After reviewing the evidence in this case, we conclude that the circuit court's judgment is not supported by sufficient evidence and must be reversed.

The only evidence indicating that the former husband did not retire is the former wife's testimony that "[the former husband] had not actually

12

retired from the military but had been discharged prior to retirement due to misconduct." The former wife, however, undercut that testimony by admitting documents that indicated that the former husband had retired and that the retirement was not because of misconduct. The former wife submitted two documents containing the former husband's current duty and assignment information that listed his duty title as "retired awaiting pay." She also submitted a reserve order dated March 31, 2023, that stated that the former husband "IS RELIEVED FROM CURRENT ASSIGNMENT, ASSIGNED TO THE RETIRED RESERVE SECTION AND PLACED ON THE USAF RESERVE RETIRED LIST ... ENTITLED TO NEXT GENERATION UNIFORMED SERVICES IDENTIFICATION CARD, (USID) (RETIRED)." (Capitalization in original.) That order also states the reason that the former husband was relieved from his then-current assignment was that he was eligible "for retired pay except for attainment of eligibility age." Because the former wife's testimony conflicts with her own evidentiary exhibits, which include the former husband's reserve order and indicate that the former husband had retired from the Air Force Reserve, the circuit court's

13

finding that the former husband had not retired is so unsupported by the evidence as to be plainly and palpably wrong.

The former wife argues also that the word "retire" as used in the parties' settlement agreement is ambiguous. The former wife asserts that there are two possible interpretations of the word "retire." According to the former wife, "retire" does not mean retirement from active duty; instead, according to the former wife, retirement means the ability to draw retirement benefits, which the former husband was not yet able to do. Therefore, according to the former wife, the former husband was not "retired."

An ambiguity exists if an agreement is susceptible to more than one meaning. Ex parte Peake, 357 So. 3d 1192, 1199-200 (Ala. Civ. App. 2021) (citing Bridges v. Bridges, 69 So. 3d 885, 889 (Ala. Civ. App. 2011)). "[W]hen a court finds a written contract to be ambiguous, parol evidence is admissible to aid in interpreting the parties' agreement." Cummings v. Hill, 518 So. 2d 1246, 1248 (Ala. 1987). But "just because the parties allege different constructions of an agreement … does not necessarily mean that the agreement is ambiguous." Yu v. Stephens, 591 So. 2d 858, 859-60 (Ala. 1991).

First, the settlement-agreement provision stating that the former husband's alimony shall continue until he "retires from the United States Air Force" is not ambiguous. "Words used in a contract will be given their ordinary, plain, or natural meaning where nothing appears to show they were used in a different sense or that they have a technical meaning. Smith v. Citicorp Person–to–Person Fin. Ctrs., Inc., 477 So. 2d 308 (Ala. 1985)." Ex parte Dan Tucker Auto Sales, Inc., 718 So. 2d 33, 36 (Ala. 1998). The former wife argues that § 32-6-290, Ala. Code 1975, and § 13A-11-70, Ala. Code 1975, "support the ambiguity of the phrase "retires from the United States Air Force." The former wife's brief at 19. Those statutes, however, contain definitions for different phrases than the one used in the settlement agreement; § 32-6-290 provides a definition for "retired military" and § 13A-11-70 provides a definition for "Retired Military Veteran." Furthermore, both of those definitions indicate that a retiree is one who retires from "active duty," which supports the former husband's interpretation of "retires." § 32-6-290 ("The words 'retired military' as used in this division … means only those persons who are nondisability retirees from active duty …."); § 13A-11-70(8) ("Retired military veteran. An individual who is a retiree from active duty ….").

15

We therefore disagree with the former wife that § 13A-11-70 and § 32-6-290 demonstrate that the phrase "retires from the United States Air Force" is ambiguous.

Nothing in the settlement agreement indicates that the word "retires" was intended to be used in a different sense than the common definition of that term or that it has a technical meaning, see Ex parte Dan Tucker Auto Sales, Inc., supra; therefore, the plain meaning of that word controls. "Retires" means: "1. To stop working at a job, usu[ally] upon reaching the normal age for leaving employment <to retire at age 75>." Black's Law Dictionary 1577 (12th ed. 2024). In this case, the former husband retired, i.e., stopped working for the Air Force Reserve in 2023. He no longer receives pay from that employer; he retired.

But even if we were to consider the word "retire" to be ambiguous, neither the former wife's testimony nor the circuit court's findings suggests that "retire" means "able to draw retirement benefits." First, the former wife testified that she believed that the former husband would not "retire" for eight more years. However, if the former husband had retired after eight years, he would not have been eligible to draw retirement pay at that time. The former husband was 37 years old at the time the parties

16

divorced, and the former husband testified that he would not be eligible to receive retirement pay until age 60. Thus, if the former wife believed -- as she testified -- that the former husband would "retire" in eight years, she could not have understood the word "retire" to mean "eligible to draw retirement benefits."

Additionally, the circuit court found that "[t]he parties were aware the [former] husband had 8 more years until retirement" and modified the alimony award to require him to pay alimony for 96 months. The former husband would be 45 years old at the time the alimony award, as modified by the circuit court, expires. If the circuit court had found that the meaning of "retire" was ambiguous and had found that the parties' intended "retire" to mean once the former husband was eligible to receive retirement pay, the circuit court would have ordered that the former husband pay alimony until that event occurred, i.e., until the former husband turned 60 years old. Although ordering alimony to run for eight years appears to be an attempt to achieve perhaps a more fair outcome for the former wife, the circuit court's award indicates that not even the circuit court interpreted "retire" to mean "eligible to draw retirement benefits."

II.   Whether the circuit court improperly modified the former husband's alimony obligation and held him in contempt

The former husband argues that the circuit court improperly modified the parties' settlement agreement that was incorporated into the divorce decree. The former husband asserts that the parties agreed that he would pay $1,200 per month until he retired from the Air Force Reserve, not that he would pay $1,200 per month for 96 months. The former husband argues that he retired from the Air Force Reserve, and that the award of alimony has, therefore, expired by the terms of the agreement. As discussed above, we are reversing the circuit court's finding that the former husband had not retired from the Air Force Reserve. Accordingly, the alimony award expired by the terms of the divorce decree. Therefore, we reverse the circuit court's judgment to the extent that it ordered the former husband to pay additional alimony to the former wife. We also reverse the circuit court's judgment to the extent that it found the former husband in contempt for failure to pay alimony.[1]

---

[1]We acknowledge that it is inadvisable for a party to unilaterally cease making alimony payments and that doing so puts that party at risk of being held in contempt. Henderson v. Mogren, 149 So. 3d 629, 638 (Ala. Civ. App. 2014) ("[U]nless a trial court modifies its existing order, a payor spouse is obligated to comply with the terms of the existing order.").

III. Whether the circuit court erred in ordering the clerk of the circuit court to execute a warranty deed vesting title in the marital home in the former wife

Finally, the former husband argues that, under the terms of the settlement agreement, the former wife's paying him 50% of the equity in the marital home would not trigger any requirement that the former husband transfer full title to the home to her. He argues that the circuit court's finding on this point is not in accordance with the plain language of the divorce decree.

This court has previously held that when the terms of a property-division agreement that is incorporated into a divorce judgment are unambiguous, the trial court loses jurisdiction to change a property division 30 days after the entry of the judgment. Cannon, 844 So. 2d at 1221. In Cannon, the parties entered into a settlement agreement that was incorporated into the final divorce judgment. Id. at 1220. The provision in the judgment that related to the parties' marital home awarded title of the marital home to the husband, directed the former wife to execute the necessary documents to convey that property to the husband, and provided that the parties would sell the marital home and

19

equally divide the proceeds. <u>Id.</u> at 1220-21. The parties also agreed that, if the marital home had not sold in one year, the husband would pay the former wife 50% of the equity in the marital home. <u>Id.</u> at 1221. A year after the divorce, the husband initiated an action to have the former wife execute a quitclaim deed transferring title solely to him, and the former wife filed a motion for contempt asking the trial court to order the husband to pay her 50% of the equity in the marital home. <u>Id.</u> at 1220. The trial court ordered the husband to pay the former wife her 50% share of the equity in the marital home, placed her in possession of the marital home until payment was made, and held that the former wife was not required to execute any deeds to the husband until he paid her a 50% share of the equity. <u>Id.</u>

The husband in <u>Cannon</u> appealed, arguing that the trial court had improperly modified the divorce judgment in response to the former wife's motion. <u>Id.</u> at 1221. He argued that the trial court could not award the former wife possession of the property because that was not a term in the divorce judgment. <u>Id.</u> We agreed and held that a trial court cannot modify property provisions in a divorce judgment, other than correcting clerical errors, once 30 days have elapsed from the entry of the final

judgment. Id. We further held that the parties' agreement was unambiguous and vested the husband with title to the marital home with the former wife to receive her equity payment after one year. Id. We reversed the trial court's judgment in Cannon to the extent that the judgment modified the property division 30 days after the judgment had been entered. Id.

Cannon is instructive in this case. The parties in this case agreed that the former husband would transfer title to the marital home to the former wife: (1) if the former wife paid off the outstanding promissory note secured by a mortgage on the marital home or (2) if the former wife refinanced the marital home and removed the former husband from any liability on the promissory note secured by a mortgage. Separate from those scenarios, the parties also agreed (1) that the former wife could sell the marital home at any time and would be entitled to all the net proceeds from the sale and (2) that the parties would have the home appraised, and the former wife would pay the former husband 50% of the equity in the marital home. Neither of the latter scenarios would have resulted in the transfer of title to the former wife.

21

The evidence showed that the former wife had paid the former husband 50% of the equity in the marital home by the time of trial; however, the settlement agreement provides unambiguously that only two events trigger transfer of title -- paying off the promissory note secured by a mortgage or refinancing. The plain terms of the parties' settlement agreement do not provide that the former husband will transfer title to the former wife once the equity payment is made. Similar to Cannon, the circuit court has improperly modified the property division of the divorce decree more than 30 days after its issuance. As a result, we reverse the circuit court's judgment to the extent that the judgment modified the property division and ordered the clerk of court to execute a warranty deed to the former wife vesting her with full title in the marital home.

Conclusion

Based on the foregoing, the judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.